[Crim. No. 29383. Second Dist., Div. Four. July 27, 1977.]

**THE PEOPLE, Plaintiff and Respondent, v.
GERALDINE GRAY, Defendant and Appellant.**

## COUNSEL

Kent & Kent and Gary O. Kent for Defendant and Appellant.

Wilbur F. Littlefield, Public Defender, John J. Gibbons, Alan H. Simon and William D. Weiss, Deputy Public Defenders, as Amici Curiae on behalf of Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Robert F. Katz and Kent M. Bridwell, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

FILES, P. J.—This is an appeal from an order committing appellant to the California Rehabilitation Center for treatment as a narcotic addict. The sole issue raised by her counsel is whether, on constitutional grounds, the court should have limited the commitment to a period of six months, which is the maximum jail term which could have been imposed for the offense of petty theft.

The procedural history of the case, so far as reflected in the record on appeal, is as follows:

On November 5, 1974, appellant was arrested for shoplifting, and on December 27, 1974, pleaded guilty to petty theft. Her probation report related that she had admitted use of heroin, and, in the opinion of the narcotics evaluator, she was probably an addict, but probation under supervision was recommended. Appellant was then placed on probation.

Subsequent probation reports advised the court that·appellant had failed to keep appointments for testing, raising the suspicion that she had continued the use of drugs.

On November 2, 1975, she was arrested again for shoplifting. On the following day she pleaded guilty to a charge of petty theft and was placed on summary probation. She failed to report to her probation officer and a bench warrant was issued. On June 29, 1976, the municipal court adjourned proceedings in the 1974 theft case and certified defendant to the superior court for narcotics addiction proceedings.

The superior court hearings were held on July 13 and 21, 1976, following which the court found, upon the medical evidence, that appellant was a narcotic drug addict or in imminent danger of becoming addicted. A jury trial was waived, and appellant was committed for placement in the California Rehabilitation Center. Her appeal is from that order.

Appellant relies upon *People* v. *Olivas* (1976) 17 Cal.3d 236 [131 Cal.Rptr. 55, 551 P.2d 375], for her contention that it is a denial of equal protection to commit her to the rehabilitation center for a longer period than six months, which is the maximum term prescribed by the Penal Code for the misdemeanor offense of which she was convicted. In *Olivas,* the question was whether a misdemeanant under the age of 21 might constitutionally be committed to the Youth Authority (under Welf. & Inst. Code, § 1731.5) for a term potentially longer than the maximum jail term which might have been imposed for the same offense if committed by a person over the age of 21 years. The Supreme Court held in *Olivas* that the difference in terms, depending on whether the offender was less than 21 years of age at the time of apprehension, had no reasonable basis and served no compelling state purpose.

In the case pending here, appellant asks equal treatment with other persons convicted of petty theft. The flaw in that argument is that appellant has, not been committed for theft, but for narcotics addiction. The program established by the Legislature to confine narcotic addicts

for treatment and rehabilitation is not intended as a punishment for crime. It is afforded as an alternative to the sanctions of the criminal law in certain cases, and it is also made available for those who have not been charged with crime. (See Welf. & Inst. Code, § 3100 et seq.)

The brief of amici curiae submits figures purporting to show that only a few persons are presently in custody for narcotics addiction who had not been convicted of a crime. If this is so, it would appear only to indicate that district attorneys (who are empowered to initiate these proceedings) have chosen to devote the limited resources of the state to the rehabilitation of those whose addiction has been coupled with other criminal activity.

The Legislature has seen fit to create one procedure for the civil commitment of addicts convicted of a crime (Welf. & Inst. Code, § 3050) and a different procedure for the civil commitment of others. (*Ibid.,* § 3100 et seq.) (See *In re Lopez* (1970) 2 Cal.3d 141, 148 [84 Cal.Rptr. 361, 465 P.2d 257].) To this extent the Legislature has classified those. convicted of crime separately from others.

There can be little doubt that one of the Legislature's principal concerns in this area is repetitive petty thefts by narcotic users. "The program was designed to avoid the hopeless 'revolving door' situation of jailing addicts for crimes committed under compulsion of habit, freeing them on parole (or at the expiration of their term) and then rejailing them upon their inevitable return to addiction and renewed criminality." (*In re Bye* (1974) 12 Cal.3d 96, 104 [115 Cal.Rptr. 382, 524 P.2d 854].) The appropriateness of the system which the Legislature has designed (and redesigned from time to time) for the involuntary treatment and rehabilitation of that class of persons has been upheld by the courts. (See *In re De La O* (1963) 59 Cal.2d 128 [28 Cal.Rptr. 489, 378 P.2d 793, 98 A.L.R.2d 705]; *In re Trummer* (1964) 60 Cal.2d 658 [36 Cal.Rptr. 281, 388 P.2d 177]; *In re Cruz* (1965) 62 Cal.2d 307 [42 Cal.Rptr. 220, 398 P.2d 412]; *People* v. *Reynoso* (1966) 64 Cal.2d 432 [50 Cal.Rptr. 468, 412 P.2d 812]; *In re Marks* (1969) 71 Cal.2d 31, 51 [77 Cal.Rptr. 1, 453 P.2d 441].)

From the beginning of that program, courts have recognized that the commitment, though civil in purpose, is an invasion of the individual's fundamental right to personal liberty, so that some of the procedural safeguards used in criminal cases should be made available. (See *People* v. *Victor* (1965) 62 Cal.2d 280, 288 [42 Cal.Rptr. 199, 398 P.2d 391]; *People* v. *Moore,* 69 Cal.2d 674, 681 [72 Cal.Rptr. 800, 446 P.2d 800].)

Subsequent decisions have enlarged the list of rules taken from the criminal practice which are made applicable for the protection of the individual faced with a loss of liberty for the purpose of treatment; e.g., *People* v. *Thomas,* 19 Cal.3d 630 [139 Cal.Rptr. 594, 566 P.2d 228], holding that a narcotic commitment must be based upon proof beyond a reasonable doubt.

But those decisions do not compel or even support a cynical conclusion that treatment and rehabilitation have ceased to be legitimate state objectives. The courts have not said that no involuntary commitment, for any purpose, is permissible unless justified by substantive standards applicable to punishment.

The brief of amici curiae points to the "recent trend of California courts and Legislature to limit the duration of civil commitments," and refers particularly to *Jackson* v. *Indiana* (1972) 406 U.S. 715 [32 L.Ed.2d 435, 92 S.Ct. 1845] and *In re Davis* (1973) 8 Cal.3d 798 [106 Cal.Rptr. 178, 505 P.2d 1018]. None of the cases making up this trend address themselves to the special problems of the treatment and rehabilitation of narcotic addicts. *Jackson* and *Davis* involved commitment of defendants in criminal cases who had been found to lack competence to stand trial. The procedures there discussed were found constitutionally defective in providing indefinite commitment without regard to the likelihood that the person would regain competence within a reasonable time. The rationale of the decisions is that when a person is committed solely because he is incompetent to stand trial, no purpose is served by continuing the confinement after it appears unlikely that he will regain the requisite capacity.

Narcotics addicts are confined for their own protection, the protection of the public and the prevention of contamination of others (see Welf. & Inst. Code, § 3000); the objectives are both treatment and rehabilitation. (See *In re Trummer, supra,* 60 Cal.2d at p. 661.) The statute provides for release to outpatient status when the person is ready, and discharge from the program after two consecutive years of abstention as an outpatient. (Welf. & Inst. Code, §§ 3151, 3200.) Nothing in the statute or the record here suggests that appellant is likely to be confined or otherwise restrained of her liberty beyond the period of time necessary to carry out the salutary purposes of the commitment.

The concept urged by appellant here—limiting involuntary participation to a period no longer than the maximum sentence for a specific

crime—would make the existing program useless for any addicts except those convicted of the most serious felonies. The California system has been designed upon the premise that the power to confine an addict for a substantial period and to supervise him for a subsequent period as an outpatient is essential to successful treatment and rehabilitation. (See *In re De La O, supra,* 59 Cal.2d at p. 140; *In re Trummer, supra,* 60 Cal.2d at p. 661; *In re Cruz, supra,* 62 Cal.2d at p. 314; *In re Marks, supra,* 71 Cal.2d at p. 45; *In re Bye, supra,* 12 Cal.3d 96, 104.)

It would be an ironic twist of constitutional doctrine to hold that a program designed to help petty criminals, whose crime was a product of addiction, could only be provided for the hard-core felons, who, under present standards, are regarded as unfit for this kind of treatment. (See Welf. & Inst. Code, §§ 3051-3053.)

The order is affirmed.

Kingsley, J., and Dunn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 22, 1977.