[Crim. No. 9632. Fourth Dist., Div. Two. Dec. 19, 1977.]

In re SCOTT HUNTLEY WERDEN on Habeas Corpus.

COUNSEL

Paul Halvonik, State Public Defender, Charles M. Sevilla, Chief Assistant State Public Defender, Rowan K. Klein and Richard Lennon for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Karl J. Phaler and A. Wells Petersen, Deputy Attorneys General, for Respondent.

OPINION

**GARDNER, P. J.**—In 1972, petitioner pleaded guilty to burglary and was placed on probation. In 1973, he pled guilty to another burglary, his probation was revoked, and he was sent to CRC. He has now spent approximately four years in and out of CRC. Theoretically, he can be under the jurisdiction of the program for another three to five years. (Welf. & Inst. Code, § 3201.) In the meantime, the new determinate sentence law has become effective and under that law he could have been sentenced to prison no longer than three years and eight months on the burglary. (Pen. Code, §§ 460, 461, 1170.1, subd. (a) and 1170.2.)

Petitioner now wants out. He contends that he has been denied equal protection of the law since his period of confinement exceeds that of others convicted of the same offense. He contends that his interest in freedom is a fundamental one. This is true. He further contends that the state must show a compelling justification in order to abridge it. This also is true. However, unfortunately for the petitioner, the State has shown such a compelling justification.

Basically, petitioner's contentions are answered in *People* v. *Gray*, 72 Cal.App.3d 18 [139 Cal.Rptr. 805]. Petitioner invited us to take issue with *Gray*. This, we decline to do. While *Gray* is not a compelling authority, we find its scholarly analysis persuasive. Therefore, we adopt *Gray* and choose to follow it. Theoretically, that should terminate the discussion. However, the facts in this case so graphically illuminate the validity of the holding in *Gray* that we feel compelled to set them forth at some length.

This case presents a depressingly familiar, albeit bleak, picture of the narcotics addict, his problems and the need of the state to protect itself against him. As we shall see, the Legislature has done so—comfortably within constitutional limitations.

Petitioner began with marijuana at age 14. By the time he was 15, he was on acid. At 16, he was injecting methedrine. At 17, he had graduated to heroin. By age 21, he was hooked—a junkie with a $100-a-day habit which he was supporting by committing burglaries. At age 22, he entered the CRC program enthusiastically (he had become suicidal) and was given a seven year commitment. He has been in and out of CRC since. It would take an expert to translate the CRC hieroglyphics as to his treatment history but we gather that he has been out more than he has been in. He seems to be a young man of pleasing personality with a good degree of intelligence. Nevertheless, because of his addiction, he simply cannot as yet function successfully outside of a structured environment. He has tried the methadone program without much success. He always goes back to heroin. His employment history is spotty. He has tried college, again with minimal success. Four years of treatment have not cured him. However, the authorities at CRC are patient enough and hopeful enough to continue their efforts to treat his addiction.

But all of the above is familiar to anyone involved in the administration of criminal justice. There is nothing very funny about the narcotics addict. He leads a tragic, unhappy, twisted life. For humanitarian

reasons society should attempt to do everything reasonably possible in the way of a treatment program for him. Additionally, for the protection of society, all reasonable efforts to cure his addiction should be tried. In this respect, it should be remembered that petitioner had a $100-a-day habit which he was feeding by stealing from innocent and law-abiding citizens. It is common knowledge that one seldom steals $100 a day in cash. Considerably more than that in jewelry, TVs, stereos and all the other usual loot found in burglaries must be stolen and fenced in order to get that much spending money per day. When one contemplates the loss to the law-abiding element of society in supporting a narcotics addict with a $100-a-day habit through crime, the figures become astronomical. In the instant case, a cure has not been accomplished, yet during the four year period of petitioner's exposure to the CRC program, society has been protected from his plundering pattern which he had established to feed his habit.

Thus, while much of the judicial literature in this field addresses itself to the treatment aspect of the CRC program, it should be remembered that the basic premise of all programs dealing with those who violate our laws whether these programs be termed rehabilitation, correctional or outright punitive is the protection of society. The underlying purpose of this and all other programs in the correctional field is the protection of innocent individuals and the social fabric from those who violate our laws. The purpose of CRC is the protection of society from those who suffer a dual disability—narcotics addiction and criminality.

With this as a background, (a) the humanitarian desire to do something about a sick person, and (b) the need of the law-abiding element of society to protect itself, we test petitioner's contention that he has suffered a denial of equal protection of the laws.

It goes without saying that the Legislature has the power to establish programs for the protection of its citizenry. The courts should interfere only when such programs come into direct conflict with constitutional provisions and in this respect should exercise considerable restraint. As Justice Stone said in *United States* v. *Butler,* 297 U.S. 1, 78-79 [80 L.Ed. 477, 495, 56 S.Ct. 312, 102 A.L.R. 914], "[W]hile unconstitutional exercise of power by the executive and legislative branches of government is subject to judicial restraint, the only check upon our own exercise of power is our own sense of self-restraint."

■ The doctrine of equal protection of the law does not mean that everyone must be treated in exactly the same way. It does mean that there must be equal treatment unless the state can show a compelling justification to the contrary. This, the state has clearly done.

■ Petitioner contends that since others convicted of the same offense may serve shorter terms that he has been denied equal protection. Not so.

Petitioner is in the CRC program because of his narcotics addiction and its result not only to him but to the rest of society. He is there because of a physical and psychological addiction. Narcotics addiction and crime go hand in hand. Addiction breeds crime. Petitioner needs and society demands particularized treatment of him because of that condition. By carefully selecting phrases from opinions which properly accent the importance of loss of liberty, petitioner would have us believe that the loss of liberty is the only consideration when one considers equal protection of the law. Certainly, loss of liberty is a fundamental interest. Nevertheless, the state may, upon a showing of a compelling justification, treat this petitioner's loss of liberty in a different way than it would treat someone not addicted. This the state has done with the narcotics addict.

It is true, as petitioner points out, that the Legislature has now determined that the juvenile and the MDSO must be afforded sentences no greater than adults or non-MDSOs committed for the same offenses. As to the juvenile, the juvenile court is becoming more tailored to the protection of society and less to the concept that everything is being done for the protection of the child. As to the MDSO, that program has undergone so many mutations that time in custody has become secondary. Apparently, the Legislature has determined that the juvenile court program and the MDSO program can be effectively handled within the time span of criminal imprisonment for the underlying offense. However, the Legislature has not so determined insofar as the addict is concerned. It is not for us, under the guise of constitutional interpretation, to make a contrary decision.

Most of law, constitutional or otherwise, involves an accommodation between conflicting values and interests. Here, society has decided, in balancing the need to protect itself against the needs of the addict, that CRC with its indeterminate commitment should be used rather than simply warehousing the addict under the same sentence as would be

received by the nonaddict. It is true that the petitioner is going to be under the jurisdiction of CRC longer than a nonaddict burglar. However, he is not an ordinary burglar—he is an addicted burglar. Unless the courts are going to make a complete fetish of time in custody and by a dogmatically mechanical application of time in custody to all of our efforts at deterrence and control in the field of criminal misbehavior, CRC stands the test of constitutional scrutiny.

Petitioner would have us believe that *In re Moye** (Cal.App.) compels a contrary conclusion. Not so.

*Moye* merely held that someone committed to a state hospital under a not guilty by reason of insanity proceeding based on a charge of felony hit and run could not be kept in the state hospital longer than the maximum term prescribed for the underlying offense unless civil commitment proceedings were instituted. Indeed, the facts in *Moye* and the facts in the instant case point up that the CRC program has a reasonable basis and serves a compelling state purpose. It is interesting to compare the two factual situations. Mr. Moye had been found not guilty by reason of insanity on a charge of felony hit and run. Long after the maximum time he could have been imprisoned on the underlying criminal charge, he was still in Atascadero. The interest of the state in keeping Mr. Moye in a state hospital without civil commitment proceedings was minimal. Compare that to the interest of the state in keeping petitioner under some kind of control and supervision for a prolonged period of time. Petitioner is an addict-thief who was feeding a $100 a day habit by stealing from the law-abiding segment of society. The contrast between the two is, to put it mildly, considerable. Thus, as to the CRC program, we can see that it has a reasonable basis and serves a compelling state purpose in keeping the addict criminal under supervision longer than the nonaddict criminal.

Writ denied.

McDaniel, J., and Morris, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied March 16, 1978. Newman, J., was of the opinion that the application should be granted.

---

*Reporter's Note: Hearing granted, December 28, 1977 (Crim. 20330, 20331).