[Crim. No. 11967. Fourth Dist., Div. One. Jan. 28, 1981.]

In re RALPH MORALES on Habeas Corpus.

458

COUNSEL

Quin Denvir, State Public Defender, and Richard Lennon, Deputy State Public Defender, for Petitioner.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Harley D. Mayfield, A. Wells Petersen, Jay M. Bloom and Michael D. Wellington, Deputy Attorneys General, for Respondent.

OPINION

**BROWN (Gerald), P. J.**—Ralph Morales petitions for immediate release, alleging he is unconstitutionally confined in the California Rehabilitation Center (CRC) for a longer period than the determinate sentence for the underlying criminal offense.

On January 15, 1975, when Morales was convicted of illegally possessing a firearm (Pen. Code, § 12021), the offense was punishable either as a felony with a maximum term of 15 years in prison or as a misdemeanor in county jail.[1] Sentence was not imposed; Morales was civilly committed as a narcotic addict to the CRC. The maximum term of commitment for a narcotic addict when Morales was committed was seven years. However, by legislative amendment to Welfare and Institutions Code section 3201 (eff. July 29, 1980) the term of a CRC commitment for those who commit crimes after its effective date is limited to the determinate sentence for the underlying offense. (Stats. 1980, ch. 822, § 8, p. 2588.) That amendment expressly applies prospectively only. (*Id.* § 9.)

Because Morales has never been sentenced for his offense, we do not know whether (1) his offense would be treated as a felony or a misdemeanor, (2) the court would impose a 15-year term or something less, and (3) the Board of Prison Terms, in recomputing his sentence under the determinate sentence law, would treat him as a serious offender or impose the determinate sentence now prescribed for his offense.

The People say the writ petition is moot and should be dismissed because on October 16, 1980, the superior court vacated Morales' civil addict commitment and remanded him for sentencing on the underlying

---

[1]The punishment was changed by amendment in 1976 to either one year in county jail, or a prison term of sixteen months, two years, or three years. (Determinate sentencing law amendment, Stats. 1976, ch. 1139, § 303, p. 5161, eff. July 1, 1977; Pen. Code, § 18.)

criminal offense. The superior court released him from custody and the Board of Prison Terms is now considering whether a serious offender hearing (Pen. Code, § 1170.2, subd. (b)) should be held. ■ Because, however, we have fully considered the important issue of the constitutionality of the prospective application of the 1980 amendment which will affect many inmates of CRC, we proceed to decide the case (*In re William M.* (1970) 3 Cal.3d 16, 23 [89 Cal.Rptr. 33, 473 P.2d 737]).

Morales questions the constitutionality of the prospective application of the 1980 amendment which limits CRC commitments to the underlying sentences. ■ He contends it denies equal protection of the laws to base disparate treatment of offenders solely on the date of incarceration (*In re Kapperman* (1974) 11 Cal.3d 542, 548 [114 Cal. Rptr. 97, 522 P.2d 657]; *In re Thomson* (1980) 104 Cal.App.3d 950, 955 [164 Cal.Rptr. 99]). Such fact alone is an insufficient basis to treat prisoners differently. Here, however, other differences exist. ■ It has been pointed out there are rational reasons to treat narcotics addicts committed to CRC differently from other kinds of institutionalized persons such as MDSO patients or persons incompetent to stand trial. Narcotics addict commitment is an alternative to criminal sanctions. Its objective is treatment and rehabilitation as well as to protect the public. It has been demonstrated such treatment and rehabilitation requires long confinement. (See *People v. Gray* (1977) 72 Cal.App.3d 18 [139 Cal.Rptr. 805]; *In re Werden* (1977) 76 Cal.App.3d 79 [142 Cal.Rptr. 622].) Both *People v. Gray* and *In re Werden, supra*, have held there is compelling justification, for the reasons stated, to treat narcotics addict commitments differently than persons who have committed the same underlying offenses but who are not addicts. (Cf., *People v. Olivas* (1976) 17 Cal.3d 236 [131 Cal.Rptr. 55, 551 P.2d 375] (youth authority); *People v. Feagley* (1975) 14 Cal.3d 338 [121 Cal.Rptr. 509, 535 P.2d 373] (mentally disordered sex offender); *In re Moye* (1978) 22 Cal.3d 457 [149 Cal.Rptr. 491, 584 P.2d 1097] (incompetents).)

■ The problem here, however, is the 1980 amendment is a legislative choice to treat addicts no differently than nonaddicts who committed the same underlying offenses. Thus that amendment rejects the justification posed in *Gray* and *Werden* for different treatment. Nevertheless, by limiting the amendment to prospective effect, the Legislature has also chosen to treat differently addicts and nonaddicts committing the same crimes before July 29, 1980. Is that a constitutional choice?

According to *Kapperman, supra*, 11 Cal.3d 542, and *Thomson, supra*, 104 Cal.App.3d 950, date of incarceration is not a rational difference between classes of persons. The Attorney General has argued, however, if the amendment is not applied prospectively, an enormous burden will be imposed on the Board of Prison Terms and the personnel at CRC to hold determinate sentencing hearings for all CRC inmates who committed their offenses before its effective date. Although the Attorney General baldly states that burden will be so immense the Legislature would prefer this court to strike the entire amendment rather than to refuse to apply it prospectively, the People's brief does not provide any data measuring that burden. This court is not in a position to research the facts independently, but we note a simple reading of the applicable statutes shows the increased burden from retroactive application is not coextensive with the number of prisoners who committed their offenses before July 29, 1980. Many of those prisoners would have to be sentenced in any event, if not now, then at a later time, when they are either discharged from the program or otherwise returned to the criminal court. For example, a person committed to the program and later excluded as unfit must return to court for sentencing (Welf. & Inst. Code, § 3053). Similarly, persons who remain drug free for stated statutory periods (Welf. & Inst. Code, § 3200) or who are discharged at the expiration of the maximum commitment period (Welf. & Inst. Code, § 3201) are returned for sentencing, and although their charges may be dismissed, they may also be committed to prison, depending on the sentence for the underlying offense, the amount of time already spent in CRC and the discretion of the sentencing court. (See *People* v. *Gray* (1976) 65 Cal.App.3d 220, 224-225 [135 Cal.Rptr. 206].) In short, the entire statutory scheme for CRC commitments continues to encompass, as in the past, necessary sentencing procedures for an unknown number of inmates. Although this case is not precisely like the facts in *In re Kapperman, supra*, 11 Cal.3d 542, where the burden put forward to justify prospective application consisted only of paper calculations, not hearings, nevertheless there is no demonstration here of the number of hearings necessary because of the amendment to section 3201, nor what time and resources will be required solely as the result of fully retroactive application of the statute. Accordingly, no justification for prospectivity has been shown on the basis of the burden on the system.

The People also argue prospective application is justified to preserve the possibility of long periods of parole supervision for persons who committed their crimes before January 1, 1979. The courts have al-

ready held the amendment to the determinate sentence law which increases the maximum period of parole supervision from 18 months to 4 years (Pen. Code, § 3000) cannot be applied to persons who committed their offenses before its effective date of January 1, 1979 (*In re Thomson, supra,* 104 Cal.App.3d 950 [164 Cal.Rptr. 99]; *In re Bray* (1979) 97 Cal.App.3d 506 [158 Cal.Rptr. 745]; *In re Harper* (1979) 96 Cal.App.3d 138 [157 Cal.Rptr. 759]). The People argue addicts in the pre-1979 category, such as Morales, therefore "escape" the longer period of parole supervision which the Legislature arguably regarded as essential to the success of a narcotics addict commitment program (*People* v. *Gray, supra,* 72 Cal.App.3d 18; *In re Werden, supra,* 76 Cal.App.3d 79).

Although persons like Morales who committed their offenses before 1979 will not be subject to more than one year parole supervision after they are released from custody, that fact cannot be a basis to sustain the prospectivity of the statute, because the statute also excludes from its benefits a class of persons who will be subject to longer parole supervision, namely, those who committed their offenses between January 1, 1979, and July 29, 1980. The statutory amendment makes no reference to the January 1, 1979, date nor does it discriminate in any way between pre- and post-1979 offenders; thus there is no evidence the Legislature was at all concerned with the possible differing parole supervision periods when it chose to make the statute prospective. If there were such legislative intent we might indeed effectuate it by limiting the prospectivity requirement to those persons to whom it could be constitutionally applied; but in the absence of such evidence of intent, it is not a court's function to rewrite the amendment entirely by delineating separate classes of persons as to whom the legislation may, or may not, be prospective.[2] Although we thus conclude the section of the amendment mandating prospectivity is entirely invalid, and cannot be rewritten by this court, we do not find the remainder of the statute invalid. As in *In re Kapperman, supra,* 11 Cal.3d 542, 550, it appears the discriminatory classification may be corrected by invalidating the impermissible exception and by extending the statutory provisions to all addicts subject to CRC. The remainder of the statute is in no way de-

---

[2]Cf. *Arp* v. *Workers' Comp. Appeals Bd.* (1977) 19 Cal.3d 395, 407-408 [138 Cal.Rptr. 293, 563 P.2d 849]; "Although courts do not lack power to remedy a constitutional defect by literally rewriting statutory language, it is a comparatively drastic alternative, to be invoked sparingly, and only when the result achieved by such a course is more consistent with legislative intent than the result that would attend outright invalidation."

pendent upon prospective application of the measure, and as stated, the People have offered no tangible proof of legislative intent preferring no amendment at all, rather than the amendment retroactively applied. The Legislature enacted the provision fully aware of the decisions in *People* v. *Gray, supra*, 72 Cal.App.3d 18, and *In re Werden, supra*, 76 Cal.App.3d 79, which permitted CRC inmates to be treated differently from other committed persons under the determinate sentencing laws. It has freely chosen not to treat those inmates differently, and may not discriminate within that class with no better basis for such different treatment than the date the offense was committed.

We conclude the Legislature may not limit the 1980 amendment to Welfare and Institutions Code section 3201 to persons who committed their offenses after July 29, 1980, and accordingly section 9 of Statutes 1980, chapter 822, is invalid. The amended statute therefore applies to Morales and its provisions control the calculation of his commitment. Because, however, he has already been released from that commitment, no further order from this court is necessary, and the petition for writ of habeas corpus is therefore denied.

Cologne, J., and Work, J., concurred.

A petition for a rehearing was denied February 17, 1981, and respondent's petition for a hearing by the Supreme Court was denied March 25, 1981. Richardson, J., was of the opinion that the petition should be granted.