[Crim. No. 16279. Fourth Dist., Div. Two. July 25, 1984.]

In re ANTHONY M. MABIE on Habeas Corpus.

302

**COUNSEL**

Anthony M. Mabie, in pro. per., for Petitioner.

John K. Van de Kamp, Attorney General, Jay M. Bloom and Frederick R. Millar, Jr., Deputy Attorneys General, for Respondent.

## OPINION

**MORRIS, P. J.**—Petitioner seeks habeas corpus based upon a contention that Penal Code section 2933[1] worktime credits were improperly denied because he is a California Rehabilitation Center (CRC) committee rather than a state prison inmate. His contention is based upon an asserted deprivation of equal protection of the laws.

### FACTS

#### *Petitioner's Background*

Petitioner was committed to the CRC in the civil addict program on February 5, 1982. He received a suspended sentence of five years and four months.

#### *Jurisdiction*

Petitioner made the same contention in an unsuccessful application for habeas corpus in the Riverside Superior Court. The petition was denied based upon the interpretation of "present statutes and case law . . . ." Therefore, petitioner's application for a writ of habeas corpus is proper, although it requires a determination of the same question of law. (See *In re Richard M.* (1975) 14 Cal.3d 783, 790-791 [122 Cal.Rptr. 531, 537 P.2d 363].)

### DISCUSSION

### I

#### *Exhaustion of Administrative Remedies*

■ At the outset we note that petitioner has not alleged exhaustion of his administrative remedies prior to seeking relief on habeas corpus. An administrative agency is ordinarily afforded the first opportunity to evaluate a petitioner's claim. (*In re Muszalski* (1975) 52 Cal.App.3d 500, 503, 508 [125 Cal.Rptr. 286].) Citing *In re Strick* (1983) 148 Cal.App.3d 906, 911 [196 Cal.Rptr. 293], petitioner responds that exhaustion of administrative remedies is not required where such action would be futile.

■ In *Strick,* this court stated "the requirement of exhaustion of administrative remedies does not apply if the remedy is inadequate. [Citation.]

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

'[T]he doctrine . . . has not hardened into inflexible dogma. [Citation.] It contains its own exceptions, as when the subject matter of the controversy lies outside the administrative agency's jurisdiction [citation], when pursuit of an administrative remedy would result in irreparable harm [citations], when the administrative agency cannot grant an adequate remedy . . . and when the aggrieved party can positively state what the administrative agency's decision in his particular case would be. [Citations.]'" (*In re Strick, supra,* 148 Cal.App.3d at p. 911.)

 As a CRC committee, petitioner is seeking worktime credit which the Legislature has authorized to *state prison* inmates. Because petitioner is seeking the credit on an equal protection of the laws theory, he comes within several of the stated exceptions to the doctrine of exhaustion of administrative remedies.

## II

### *Legal Background*

A 1980 amendment to Welfare and Institutions Code section 3201 limits the term of a CRC commitment to the determinate sentence for the underlying offense. (*In re Morales* (1981) 115 Cal.App.3d 456, 459 [171 Cal.Rptr. 425], distinguished in another context, *Baker* v. *Superior Court* (1984) 35 Cal.3d 663, 669 [200 Cal.Rptr. 293, 677 P.2d 219].) The amendment also authorizes good behavior and participation credit to reduce the maximum time a CRC committee may spend in custody. (See *People* v. *Talton* (1983) 145 Cal.App.3d 729, 730-731 [193 Cal.Rptr. 660].) The statute reads in pertinent part: "Any person committed . . . whose execution of sentence . . . was suspended pending a commitment . . . , who has spent, pursuant to this chapter, a period of time in confinement or in custody, excluding any time spent on outpatient status, equal to that which he or she would have otherwise spent in state prison had sentence been executed, including application of good behavior and participation credit provisions of article 2.5 (commencing with section 2930) . . . of the Penal Code, shall, upon reaching such accumulation of time, be released on parole . . . subject to the provisions of . . . the Penal Code." (Welf. & Inst. Code, § 3201, subd. (c).)

Prior to the 1980 amendment to Welfare and Institutions Code section 3201, a CRC committee could not obtain the good behavior and participation credit available to a state prison inmate. We upheld this former disparity against an attack on equal protection grounds on the basis of a compelling state purpose in keeping a narcotics addict under supervision longer than the nonaddict criminal (*In re Werden* (1977) 76 Cal.App.3d 79, 84 [142 Cal.Rptr. 622])) and "the premise that the power to confine an addict

for a substantial period . . . is essential to successful treatment and rehabilitation." (*People* v. *Gray* (1977) 72 Cal.App.3d 18, 23 [139 Cal.Rptr. 805].)

However, the 1980 amendment brought the rationale of *Werden* and *Gray* into question: "The problem here, however, is the 1980 amendment is a legislative choice to treat addicts no differently than nonaddicts who committed the same underlying offenses. Thus that amendment rejects the justification posed in *Gray* and *Werden* for different treatment." (*In re Morales, supra,* 115 Cal.App.3d at p. 460.)

To calculate the good behavior and participation credit available since 1980 for CRC committees, one is directed to section 2930 et seq. (Welf. & Inst. Code, § 3201, subd. (c).) Section 2931 authorizes the reduction of a prisoner's sentence by one-third for good behavior and participation.

Effective January 1, 1983, section 2933 was added to article 2.5. Under section 2933, a state prisoner who participates in *worktime* programs may reduce his sentence by up to one-half. The sole thrust of petitioner's argument is directed at obtaining the same worktime credit earning opportunities provided state prisoners under section 2933.

### III

*Statutory Interpretation and Application*

Section 2933 applies, by its own terms, to those persons "convicted of crime and sentenced to state prison, under Section 1170." ▮ Petitioner contends that the *worktime* credit authorized by section 2933 is part and parcel of the *good behavior* and *participation* credit authorized by Welfare and Institutions Code section 3201, subdivision (c). Therefore, petitioner reasons that since such credit is statutorily authorized, it is unnecessary for this court to even reach the equal protection argument.

However, subdivision (c) of Welfare and Institutions Code section 3201 clearly refers to the *good behavior* and *participation* credit in article 2.5. Interpreting a later amendment of another section which authorizes *worktime* credit as included in the good behavior and participation credit would obfuscate the distinction between two separate concepts.

Moreover, we note that there has been no corresponding amendment of Welfare and Institutions Code section 3201 authorizing section 2933 worktime credits for CRC inmates. ▮ A fundamental rule of statutory construction directs us to look to the intention of the Legislature. (E.g., *Adams*

v. *Superior Court* (1970) 8 Cal.App.3d 569, 571 [87 Cal.Rptr. 667].) █ " '[F]ailure to make changes in a given statute in a particular respect when the subject is before the Legislature, and changes are made in other respects, is indicative of an intention to leave the law unchanged in that respect.' " (*Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 65 [81 Cal.Rptr. 465, 460 P.2d 137].) █ Therefore, it is apparent that the Legislature has chosen *not* to provide section 2933 worktime credits to CRC committees. We proceed to consider whether such action deprives petitioner of equal protection of the laws.

## IV

### Equal Protection

█ "The guarantees of equal protection embodied in the Fourteenth Amendment of the United States Constitution and article I, section 7 of the California Constitution 'compel[] recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment.' " (*Darces* v. *Woods* (1984) 35 Cal.3d 871, 885 [201 Cal.Rptr. 807, 679 P.2d 458].) █ The legislative classification under examination is ordinarily clothed in a presumption of constitutionality. "However, once it is determined that the classification scheme affects a fundamental interest or right the burden shifts; thereafter *the state* must first establish that it has a *compelling* interest which justifies the law and then demonstrate that the distinctions drawn by the law are *necessary* to further that purpose." (*People* v. *Olivas* (1976) 17 Cal.3d 236, 251 [131 Cal.Rptr. 55, 551 P.2d 375].) Personal liberty is such a fundamental interest. (*Ibid.*)[2]

As we have noted, the policy reasons which have justified separate treatment of CRC addicts and state prison inmates have been greatly eroded by the 1980 amendment to Welfare and Institutions Code section 3201. (*In re Morales, supra,* 115 Cal.App.3d at p. 460.) Of crucial importance, is the fact that this court has previously assumed, even before the 1980 amendment, that CRC addicts and state prisoners sentenced for the same underlying offense *are* similarly situated. *Werden* turned upon the compelling justification for the disparate treatment. Although we did not explicitly state that the two classes of individuals were "similarly situated," it was assumed for purposes of analysis that they were. (See *In re Werden, supra,* 76 Cal.App.3d at p. 83.) In light of this assumption, and the 1980 amendment, we shall assume for the purpose of argument that a CRC committee is now similarly situated to a state prison inmate with respect to the credit in issue.

---

[2]The "rational basis" test is not appropriate because this issue arises "in the context of an initial deprivation of liberty and not in the context of solely prospective statute applications." (*In re Bender* (1983) 149 Cal.App.3d 380, 388, 387-389 [196 Cal.Rptr. 801].)

■ However, we find a compelling justification for limiting section 2933 worktime credits to state prison inmates. The intent of the Legislature in enacting section 2933 is embodied in part in the Statutes of 1982, chapter 1, section 1: "It is the intent of the Legislature that all able-bodied prisoners in the state prisons be directed to work, inasmuch as the performance of productive work on a regular basis is the most appropriate method of successfully instilling in prisoners the values of a law-abiding and cooperative society and will improve the possibility of their reintegration into that society." (Stats. 1982, ch. 1, § 1, No. 2 Deering's Adv. Legis. Serv. pp. 1-2, No. 1 West's Cal. Legis. Service, p. 67.) Moreover, section 2933 credits, unlike good behavior and participation credits under section 2931, must be *earned* by state prison inmates who work in a credit qualifying assignment. Such credit is not automatically granted. (See § 2933, subd. (b); *In re Strick, supra,* 148 Cal.App.3d at p. 913.)

The legislative purpose of instilling the work ethic in state prison inmates has little, if any, applicability to the CRC committee. "Petitioner is in the CRC program because of his narcotics addiction and its result not only to him but to the rest of society. He is there because of a physical and psychological addiction. Narcotics addiction and crime go hand in hand. Addiction breeds crime. Petitioner needs and society demands particularized treatment of him because of that condition." (*In re Werden, supra,* 76 Cal.App.3d at p. 83.) Such treatment provides the most likely prospect for petitioner's successful reentry into society. The compelling state interest is manifest by the importance of treatment for a narcotics addict. Theoretically, successful treatment would obviate the need for an addict to commit crime to support his habit. Since addiction is the root of the problem, the Legislature apparently determined that worktime credit would not foster effective treatment. This determination forms the basis of the necessary compelling state interest.

We have carefully considered petitioner's citations to other equal protection cases, namely, *People* v. *Hankins* (1982) 137 Cal.App.3d 694 [187 Cal.Rptr. 210]; *In re Martin* (1981) 125 Cal.App.3d 896 [178 Cal.Rptr. 445]; and *In re Morales, supra,* 115 Cal.App.3d 456. However, all of the cases cited involve fundamentally distinguishable equal protection issues from the case at bench. In all of the cases cited, the effect of the legislation at issue was to confer credits on certain *subclasses* of CRC inmates while denying them to others. It was that disparity that led to a conclusion of an equal protection violation. This distinction is exemplified by a quotation from *In re Martin*: "The classification created by Welfare and Institutions Code section 3201, subdivision (c) is not between addicts and nonaddicts who committed the same crimes; it is between CRC inmates who stay with the program and those who are returned for state prison sentencing." (*In re*

*Martin, supra,* 125 Cal.App.3d at p. 902.) In the case at bench, there are no subclasses of CRC committees eligible for section 2933 credits, and the comparison for equal protection purposes is between all CRC committees and state prison inmates. We therefore conclude that petitioner's claim of deprivation of equal protection of the laws is without merit.

The order to show cause is discharged and the writ of habeas corpus is denied.

Kaufman, J., and Hews, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.