[No. F002231. Fifth Dist. June 26, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM V. ROSAIA, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*See footnote 2, *post,* page 835.

834

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Louis N. Hiken and Cynthia A. Thomas, Deputy State Public Defenders, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Eddie T. Keller, Gregory W. Baugher and Nancy Sweet, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HAMLIN, J.**—Defendant was charged with assault with intent to commit rape (Pen. Code, § 220)[1] and assault by means of force likely to produce great bodily injury (§ 245, subd. (a)). He pleaded guilty to assault by means of force likely to produce great bodily injury on condition that he be sentenced to no more than two years in state prison. The court dismissed the charge of assault with intent to commit rape.

Defendant was denied probation and sentenced to two years in state prison. He appeals but does not challenge the validity of his guilty plea.

The primary issue presented herein is whether the trial court's failure to advise defendant at any stage of the proceeding that he was entitled to be sentenced by the same judge who accepted his guilty plea precludes a finding that defendant waived this right, notwithstanding the failure of defendant *and* his attorney to object to sentencing before a different judge. We conclude that, without such advice, silence and acquiescence in the sentencing by a different judge cannot be deemed a waiver. The rule we adopt requires us to remand for resentencing, but we intend the rule to be prospective only.

Defendant also urges that the trial court erred in failing to state on the record adequate reasons for denying defendant probation. We disagree.[2]

As will appear, we also reject defendant's contention that he is entitled to full one-for-one worktime credit for the presentence time he spent in county jail after January 1, 1983.

### THE FACTS

Because this appeal follows a conviction on a guilty plea and because none of the issues raised by defendant necessitate a lengthy discussion of the underlying facts, a brief summary will suffice. Defendant gained en-

---

[1]All further statutory references are to the Penal Code unless otherwise stated.

[2]Part II, the section discussing this contention, is not published, as it does not meet the standards for publication contained in rule 976(b), California Rules of Court.

trance to the apartment of 16-year-old Julia B. while he was selling magazines. Defendant and the victim engaged in conversation for some time but defendant, knowing the victim was home alone, refused to leave when she requested that he do so. Instead, defendant pulled the victim to the floor, attempted to force her to kiss him, succeeded in tearing the victim's pajama bottoms and inserting his finger into her vagina and finally, after frustrating an escape attempt, attempted to orally copulate the victim. Defendant ceased the assault when the victim began crying and told him she had been molested by her father.

DISCUSSION

At oral argument, defendant's counsel confirmed that defendant had been released from prison on parole but urged that the appeal was not moot. The People do not disagree. We believe it is appropriate to resolve the issues on appeal.

I

*Defendant's Right to Be Sentenced by the Judge Who Accepted His Guilty Plea.*

Defendant entered his change of plea before Judge Bianchi on February 3, 1983. When he appeared before Judge Bianchi on March 3 for sentencing, defense counsel stated: "Your Honor, I'm asking for a formal sentencing hearing on this matter. There should be a notation in the Court's file. I called and notified the Court about this. I have been requesting that." The court agreed to set the matter for a formal hearing and then stated to defendant: "Mr. Rosaia, you have the right to proceed today on the sentencing and the hearing on the report; however, your counsel has indicated he has requested a formal hearing. The matters in our court for formal hearings are set in Department 1 and set on a specific date so witnesses may be called and longer arguments may be made. Do you waive time to proceed today?

"DEFENDANT ROSAIA: Yes.

"THE COURT: The matter will be set in Department 1 for formal hearing. If there is any interested party on a formal hearing, we send them to Department 1 so they may be heard there or sent to a courtroom that has more time because formal hearings are more lengthy and the victim or whoever that is interested can appear." Sentencing was set over to March 11, and the sentencing hearing was ultimately held before Judge Osborn. Neither defendant nor his counsel objected to this procedure. Notwithstanding this

lack of objection, defendant now contends that the procedure violated his rights under the Supreme Court decision in *People* v. *Arbuckle* (1978) 22 Cal.3d 749 [150 Cal.Rptr. 778, 587 P.2d 220, 3 A.L.R.4th 1171]. In *Arbuckle* the Supreme Court first articulated the rule that a defendant who pleads guilty has the right to be sentenced by the same judge who accepted the plea. The court explained in part: "As a general principle, moreover, whenever a judge accepts a plea bargain and retains sentencing discretion under the agreement, an implied term of the bargain is that sentence will be imposed by that judge. Because of the range of dispositions available to a sentencing judge, the propensity in sentencing demonstrated by a particular judge is an inherently significant factor in the defendant's decision to enter a guilty plea. [Citations omitted.]

"Because the defendant has been denied that aspect of his plea bargain, the sentence imposed by another judge cannot be allowed to stand. [Citations omitted.] The defendant is entitled to be sentenced by Judge London, or if internal court administrative practices render that impossible, then in the alternative defendant should be permitted to withdraw his plea.[5]"

This court has consistently applied the rule of *People* v. *Arbuckle, supra.* In *In re Ray O.* (1979) 97 Cal.App.3d 136 [158 Cal.Rptr. 550] this court held *Arbuckle* applicable to juvenile proceedings. It also declined to limit the rule of *Arbuckle* to cases in which the transcript of the hearing on the change of plea showed by the trial court's use of the first person pronoun, "I," that the trial court considered itself to be the sentencing court, thus rejecting grammatical fortuity as a basis for precluding the defendant's reliance that the same judge who accepted the plea would preside at the dispositional hearing. The court concluded: "In the absence of clear waiver, whenever a juvenile enters a plea bargain before a judge he has the right to be sentenced by that same judge. . . . ([I]n accordance with the procedure set forth in *Arbuckle* at p. 757) if internal court administrative procedures render that impossible, then in the alternative Ray O. should be permitted to withdraw his admission of burglary. Should the admission be withdrawn, the prosecution shall have the right to reinstate the dismissed count." (*In re Ray O., supra,* at pp. 139-140, fn. omitted.) (See also *People* v. *Pedregon* (1981) 115 Cal.App.3d 723 [171 Cal.Rptr. 468].)

---

"[5]We recognize that in multi-judge courts, a judge hearing criminal cases one month may be assigned to other departments in subsequent months. However a defendant's reasonable expectation of having his sentence imposed, pursuant to bargain and guilty plea, by the judge who took his plea and ordered sentence reports should not be thwarted for mere administrative convenience. If the original judge is not available for sentencing purposes after a plea bargain, the defendant must be given the option of proceeding before the different judge available or of withdrawing his plea." (*Id.,* at pp. 756-757; see also *In re Mark L.* (1983) 34 Cal.3d 171 [193 Cal.Rptr. 165, 666 P.2d 22].)

Similarly, in *People* v. *DeJesus* (1980) 110 Cal.App.3d 413 [168 Cal.Rptr. 8], this court applied the rule of *Arbuckle* to a situation in which the sentencing hearing had initially been continued and, on the continued date, the judge who had accepted the plea was absent from the court. Notwithstanding defense counsel's request in *DeJesus* to continue the sentencing hearing until the judge's return, a continuance was denied, and sentencing was conducted before a different judge. In reversing, this court stated: "Judge Bradley's temporary absence until the 10th of October was not such a factor as to constitute impossibility within *Arbuckle.* Appellant was willing to waive time and a five-day continuance under the circumstances would not be excessive. Appellant, upon denial of his request to transfer the case to the judge who accepted the plea bargain, need not withdraw his plea of guilty or be deemed to have waived his right to appeal the ruling." (*Id.,* at p. 419.)

In the instant case, the People rely upon *People* v. *West* (1980) 107 Cal.App.3d 987 [165 Cal.Rptr. 24] for their premise that defendant's failure to object to sentencing before Judge Osborn constituted a waiver of his *Arbuckle* rights. In *West,* the defendant had entered a guilty plea before Judge McGuire and had subsequently appeared for sentencing before Judge Broderick, who was unable to accept the terms of the plea bargain and therefore permitted the defendant to withdraw his guilty plea. The defendant then proceeded to jury trial and was ultimately sentenced to a term in excess of what had been originally bargained for. The appellate court rejected defendant's assertion of his *Arbuckle* rights, stating in part: "Assuming, then, that a term included by implication in every conditional plea, unless expressly excluded, is that the judge who approves it will decide whether to continue or withdraw such approval, the right to the same judge is no less conditional than the other terms of the plea. *Arbuckle* recognizes that if a defendant's case is assigned to a different judge for sentencing, the defendant can proceed before that judge *or withdraw his plea.* (22 Cal.3d at p. 757, fn. 5.) Furthermore, even if a defendant could demand the same judge, he must do so; he does not have the option of taking his chances before the different judge and, if the result is unfavorable, then demand the original judge. Appellant did not move for reassignment to Judge McGuire or object to Judge Broderick. He may, for all the record shows to the contrary, have calculated that his chances would be better with Judge Broderick. He made his election and is bound by it." (*People* v. *West, supra,* 107 Cal.App.3d at p. 992.)

We are not persuaded by the People's argument that defendant's failure in the instant case to demand that his sentencing hearing be retransferred to Judge Bianchi was sufficient to constitute a waiver of his *Arbuckle* rights. It is true that in *People* v. *DeJesus, supra,* 110 Cal.App.3d 413 this court

distinguished *West* on the basis of DeJesus' objection to sentencing before a different judge, thus preserving his right to assert *Arbuckle* error on appeal. Nonetheless, the language in *People* v. *West, supra,* 107 Cal.App.3d at page 992, that a defendant must demand retransfer to the same judge who took the plea necessarily presupposes that a defendant has knowledge of his right to do so. Any other interpretation of the demand requirement in *West* would render the *Arbuckle* rights conferred by the Supreme Court a nullity. It is the absence of any indication in the record now before this court that defendant knew of his right to be sentenced by Judge Bianchi instead of Judge Osborn which defendant contends excuses him from any failure to object to sentencing by Judge Osborn. We agree.

In the cases summarized above, when the defendants made timely objection in the trial court to sentencing before a judge other than the one who accepted the guilty plea, it seems apparent that the defendants had somehow been made aware of their rights pursuant to *People* v. *Arbuckle.* In *West,* where a waiver of *Arbuckle* rights was found, the opinion is silent on the issue of defendant's knowledge of his *Arbuckle* rights. However, the precise issue before this court was addressed in *In re Thomas S.* (1981) 124 Cal.App.3d 934 [177 Cal.Rptr. 742], albeit in the context of juvenile proceedings. There, the court noted that the issue "of whether the juvenile court judge accepting a juvenile's plea is obligated to *advise him* of his right to the same judge at the dispositional hearing is of first impression." (*Id.,* at p. 939, italics added.) The court then stated: "It is firmly established that the first requirement of any waiver of a statutory, constitutional or, here, a hybrid, judicially promulgated contractual right is that it be knowingly and intelligently made. [Citation omitted.] Consequently, a 'valid waiver of a right presupposes an actual and demonstrable knowledge of the very right being waived. [Citations.]' [Citation omitted.] In other words, '[o]ne can waive only that of which he is aware and cannot waive that of which he is ignorant.' [Citation omitted.]

"In order to assure 'criminal defendants that the full panoply of constitutional and statutory rights provided by our system of criminal justice is available to them and . . . to insure that any waiver thereof by defendants is both voluntary and intelligent,' our Supreme Court has held that trial courts must advise defendants of certain rights although those rights included nonconstitutional ones as well. [Citation omitted.] In *People* v. *Johnson* (1974) 10 Cal.3d 868, 871-872 . . ., the Supreme Court held that where the trial court withdrew its approval of a plea bargain and failed to advise the defendant of his right to withdraw his plea pursuant to section 1192.5, the defendant should not be held to have waived this right although neither he nor his counsel requested the court to withdraw his guilty plea after the bargain was disapproved. The court simply stated: 'Thus, we believe that

. . . [defendant's] failure affirmatively to request a change of plea should not be deemed a waiver of his right to do so. Since he was never advised of his rights under section 1192.5, he should not be held to have waived them.' (*Id.*, at p. 872; fn. omitted.)

"Guided by this precedent, we conclude a juvenile court should advise a minor of his *Arbuckle* right during the jurisdictional hearing or at the commencement of the dispositional hearing if another judge is presiding. We believe doing so will not unduly burden the courts for the additional administrative burden is outweighed by the benefit of assuring that any waivers will be of a voluntary and intelligent nature. [Citation omitted.]" (*In re Thomas S., supra*, at pp. 939-940.)

■ We agree with the court's decision in *In re Thomas S.* that *Arbuckle* rights, unlike the constitutional privilege against self-incrimination, the right to trial by jury, and the right to confront witnesses, may be waived by conduct. (*In re Thomas S., supra*, 124 Cal.App.3d at p. 941.) Nevertheless, fairness dictates that before accepting silence or acquiescence in sentencing by a different judge as a waiver, the court must satisfy itself from the record that defendant knew he had the right to be sentenced by the same judge who took his plea. The court cannot reasonably assume or speculate that the defendant had the requisite knowledge of his *Arbuckle* rights even if represented by an attorney. (*Id.*, at pp. 941-942.)

■ The preferable way to assure that the record reflects defendant's knowledge of his *Arbuckle* rights is for the judge who takes the plea to advise the defendant of those rights at the time he takes the plea. However, we recognize that advisement of those rights may effectively occur at some later stage of the proceeding and that courts of different size and organization may adopt more practical and less onerous means of assuring that defendant knows of his *Arbuckle* rights. Moreover, statements or requests on the record by defendant or his counsel may import such knowledge and make formal advisement by the court unnecessary. These considerations, among others, prompt us to refrain from stating specific requirements for advice to defendants of their *Arbuckle* rights. We believe the rights of the defendant are adequately protected and onerous duties avoided by requiring only that the *record* demonstrate the defendant's knowledge of his *Arbuckle* rights to support a conclusion that defendant waived those rights by his conduct. Such a requirement is consistent with general judicial reluctance to find a waiver by silence or acquiescence. (See *People* v. *Mancheno* (1982) 32 Cal.3d 855 [187 Cal.Rptr. 441, 654 P.2d 211] [no waiver of right to diagnostic study under plea bargain by failure to state any reason why sentence should not be pronounced].)

The requirement we establish in the preceding paragraph is not satisfied in this case. Nothing in this record supports a reasonable inference that defendant knew he had the right to be sentenced by the judge who took his guilty plea, viz.: Judge Bianchi. Accordingly, we reject the People's contention that defendant's acquiescence in being sentenced by Judge Osborn constituted a waiver of his right to be sentenced by Judge Bianchi. The fact that the assignment was made only because defendant requested a formal hearing at the time of sentencing cannot operate to deprive defendant of his *Arbuckle* rights. This is the kind of administrative convenience the Supreme Court refused to accept in *People* v. *Arbuckle, supra,* 22 Cal.3d 749 as justification for denying the defendant his right to be sentenced by the judge who took his plea. (*Id.,* at p. 757.)

We conclude that defendant was denied his *Arbuckle* rights.

## II

*Denial of Probation\**

. . . . . . . . . . . . . . . . . . . . . .

## III

*Presentence Credits*

Defendant's final contention is that he was denied equal protection of the law when the trial court failed to award him credits for his presentence jail time in accordance with the terms of newly enacted section 2933, effective January 1, 1983. That section provides in pertinent part: "(a) It is the intent of the Legislature that persons *convicted of crime and sentenced to state prison,* under Section 1170, serve the entire sentence imposed by the court, except for a reduction in the time served in the custody of the Director of Corrections for performance in work, training or education programs established by the Director of Corrections. . . . For every six months of full-time performance in a *credit qualifying program,* as designated by the director, a prisoner shall be awarded worktime credit reductions from his term of confinement of six months. . . . Except as provided in subdivision (a) of Section 2932, every prisoner willing to participate in a full-time credit qualifying assignment but who is either not assigned to a full-time assignment or is assigned to a program for less than full time, shall receive no less credit than is provided under Section 2931. . . .

---

*\*See footnote 2, ante.*

"(b) Worktime credit is a privilege, not a right. Worktime credit must be earned and may be forfeited pursuant to the provisions of Section 2932. Except as provided in subdivision (a) of Section 2932, every prisoner shall have a reasonable opportunity to participate in a full-time credit qualifying assignment in a manner *consistent with institutional security and available resources. . . ."* (Italics added.) The applicable provisions of section 2931 are as follows: "(a) In any case in which a prisoner was sentenced to the state prison pursuant to Section 1170, or if he committed a felony before July 1, 1977, and he would have been sentenced under Section 1170 if the felony had been committed after July 1, 1977, the Department of Corrections shall have the authority to reduce the term prescribed under such section by one-third for good behavior and participation consistent with subdivision (d) of Section 1170.2. . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(b) Total possible good behavior and participation credit shall result in a four-month reduction for each eight months served in prison or in a reduction based on this ratio for any lesser period of time. . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(d) This section shall not apply to any person whose crime was committed on or after January 1, 1983."

Defendant places primary reliance upon *People* v. *Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874]. In *Sage,* the defendant had contended that failure to award him conduct credits pursuant to section 4019, so-called "goodtime/worktime" credits, for the period he was confined in jail prior to felony trial and sentencing constituted a denial of equal protection. The Supreme Court stated in part: "Under section 4019, a pretrial detainee eventually convicted of a misdemeanor and sentenced to county jail, hereinafter referred to as a 'detainee/misdemeanant,' receives conduct credit against that sentence for his presentence jail time. Under section 2931, a defendant who makes bail or is released on his own recognizance, then is tried, convicted of a felony and sentenced to state prison receives conduct credit against his full sentence. Only the presentence detainee eventually sentenced to prison, the 'detainee/felon,' does not receive conduct credit against his full sentence, because he is denied conduct credit for his presentence confinement. It is the distinction between the detainee/felon and the felon who serves no presentence time that raises equal protection problems.

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

"Each of the grounds advanced by the People for denying presentence

conduct credit to detainee/felons might also be given for denying such credit to detainee/misdemeanants as well. Yet detainee/misdemeanants are clearly entitled to such credit under section 4019. The inescapable conclusion is that the challenged distinction—between detainee/felons and felons who serve no presentence time—was not based on the grounds proposed. Accordingly, we will not further analyze these grounds.

"In conclusion, the People have not suggested, nor has our independent research revealed, a rational basis for, much less a compelling state interest in, denying presentence conduct credit to detainee/felons." (*People v. Sage, supra,* 26 Cal.3d at pp. 507-508, fn. omitted.) (See also *People v. Riolo* (1983) 33 Cal.3d 223, 229 [188 Cal.Rptr. 371, 655 P.2d 723].)

Significantly, at the time section 2933 was added, section 4019 was amended to codify the result in *Sage,* to wit: "(a) The provisions of this section shall apply in all of the following cases:

". . . . . . . . . . . . . . . . . . . . . . .

"(4) When a prisoner is confined in a county jail, industrial farm, or road camp, or a city jail, industrial farm, or road camp following arrest and prior to the imposition of sentence for a felony conviction. . . ." Section 4019 further provides, as it did at the time of the *Sage* decision, that for each six-day period of confinement in a county or city jail, industrial farm, or road camp "one day shall be deducted from his or her period of confinement unless it appears by the record that the prisoner has refused to satisfactorily perform labor as assigned by the sheriff, chief of police, or superintendent of an industrial farm or road camp" (subd. (b)), i.e., "worktime" credit, and "one [additional] day shall be deducted from his or her period of confinement unless it appears by the record that the prisoner has not satisfactorily complied with the reasonable rules and regulations established by the sheriff, chief of police, or superintendent of an industrial farm or road camp" (subd. (c)), i.e., "good time" credit.

Defendant's contention, pursuant to *Sage, supra,* and *Riolo, supra,* is that he is entitled to conduct credit equal to that available under section 2933 for the time spent in presentence custody based on the following *Sage* analogy: Defendant, who was unable to make bail, served 157 days in actual confinement prior to sentence. In addition to credit for time actually served, he received 78 days of conduct credit pursuant to section 4019, for 235 total days credited against his state prison sentence, two-thirds of which (157) days were spent in custody. However, defendant contends that another felon similarly situated, i.e., one who was arrested on the same day as defendant, for commission of the same crime, and who was later given an identical

state prison sentence on the same day as defendant, *but who was financially able to post bail and thus serve no presentence time in custody,* would receive full, one-on-one credits, pursuant to section 2933, on his state prison sentence. Even though defendant would be eligible for section 2933 credits after his commitment to state prison, he would serve more *total* time in actual confinement than his more well-to-do hypothetical fellow because of the statutory limitation on the credits available for presentence time in custody to one-third of the total time as opposed to the one-half reduction available on the time spent in confinement after commitment to prison. This is very similar to the analogy which was successfully argued in *Sage,* but it is not persuasive in the instant case.

In a case raising an equal protection challenge to the credits afforded under Penal Code section 2931, the court in *In re Monigold* (1983) 139 Cal.App.3d 485 [188 Cal.Rptr. 698] stated in part: " "The concept of the equal protection of the laws,' . . . 'compels recognition of the proposition that persons similarly situated *with respect to the legitimate purpose of the law* receive like treatment.' Consequently, '[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' [Citations omitted.]" (*Id.,* at pp. 488-489, italics added.) The court in *Monigold* further reaffirmed the appropriate standard of review to be utilized when an equal protection challenge is made: "California courts have historically applied the traditional two-tiered analysis. [Citation omitted.] Under that binary analysis, the first issue is whether, in the words of Justice Kaus, 'we go first class or tourist—whether we apply the "strict scrutiny" standard or the traditional "rationability" test.' [Citation omitted.] '[O]rdinarily legislation is valid if it bears a rational relationship to a conceivable legitimate state purpose, but distinctions involving suspect classifications or touching upon fundamental rights require closer examination, and are valid only if the state proves that the distinctions are necessary to serve a compelling state interest. [Citations.]' [Citation omitted.]" (*In re Monigold, supra,* at p. 489, fn. 4.)

After the Supreme Court decided *Sage,* it rejected the argument of an adult committed to the Youth Authority that he was entitled to "conduct credits, calculated pursuant to sections 2930 through 2932, for the periods of both presentence [citation omitted] and YA custody." (*People* v. *Austin* (1981) 30 Cal.3d 155 [178 Cal.Rptr. 312, 636 P.2d 1].) In rejecting the defendant's argument, the Supreme Court stated with respect to his equal protection claim: "Our recent holding in *People* v. *Sage, supra,* 26 Cal.3d 498, does not require a contrary result. There the concern was whether

conduct credits should be given for presentence custody to a person ultimately committed to prison. We determined that such credits were not statutorily mandated. Nonetheless, because of the *automatic nature* of the application of conduct credits to the length of prison terms, we held that it was a denial of equal protection to deny such credits to persons who were in jail custody before sentencing who would otherwise be required to spend a longer time in actual incarceration than those who only spent time in prison. *Sage* differs from the present case because, unlike persons sentenced to prison, adults who are committed to YA will not have their custody period in YA modified by any automatic application of conduct credits, so that application of such credits to any presentence period of custody is not required by equal protection." (*People* v. *Austin, supra,* at p. 166, italics added.)

It is clear from the express language of section 2933, as well as the statutory framework itself, that the credits available under that statute are not an automatic entitlement for all persons involuntarily confined. Initially, the Legislature unequivocally stated its intent that the statute apply to "persons convicted of crime *and* sentenced to state prison." Moreover, not only is active participation in a work incentive program approved by the director required in order to entitle the prisoner to one-for-one credit, but also earned credits may be lost, and future participation curtailed for misbehavior. The full-time credit qualifying assignments, i.e., the work incentive program, are only mandated "in a manner consistent with institutional security and available resources" (§ 2933, subd. (b)); and prisoners participating in less than a full-time qualified assignment will continue to earn the relatively "automatic" credits available under section 2931. Since the one-for-one credit available under section 2933 is limited to actual participation in a qualified program and the statute itself clearly contemplates the creation of such programs in *prisons,* as opposed to county or city jails, industrial farms, or road camps, defendant bases his equal protection claim upon the lack of an *opportunity* to participate in a qualified program during the time of presentence confinement. However, petitioner has made no argument that provision of such programs in the jail or industrial farm setting would be "consistent with institutional security and available resources." His failure to do so strongly suggests that he is not similarly situated to sentenced prisoners in state prison where such programs are available. On that basis, denial of one-for-one credits to defendant does not constitute a denial of equal protection and, in fact, does not even reach the level of a cognizable equal protection claim. This is the result reached by the First Appellate District in *People* v. *Davis* (1984) 154 Cal.App.3d 253 [201 Cal.Rptr. 422].

Two other recent cases have rejected equal protection challenges to the denial of credits pursuant to section 2933 based upon the prospective-only

application of the law. Pursuant to section 2934, a prisoner subject to the provisions of section 2931 may waive in writing such entitlement and opt instead to be subject to the provisions of section 2933. *In re Strick* (1983) 148 Cal.App.3d 906 [196 Cal.Rptr. 293], hearing denied February 2, 1984, and *In re Bender* (1983) 149 Cal.App.3d 380 [196 Cal.Rptr. 801] both affirmed the limitation on entitlement to the greater credits available under section 2933 to its effective date, January 1, 1983. Prisoners sentenced prior to that date had challenged the prospective-only availability of such credits, arguing that to deny them one-for-one credits for time spent in prison custody prior to January 1, 1983, denied them equal protection when compared to prisoners sentenced on or after January 1 who had committed crimes prior to that date but managed to avoid earlier incarceration for whatever reason. In neither *Strick* nor *Bender* did the court determine that the prisoners were in fact similarly situated to this hypothetical class of prisoners *with respect to the purpose of the new law.* In *Strick,* the court stated in part: "As a threshold requirement, it must first be demonstrated that persons *are* similarly situated with respect to the legitimate purpose of a given law before one can logically proceed with an equal protection analysis. Here, petitioner argues that he is similarly situated to all persons who committed the same crimes as he did on the same date, and, inasmuch as some of them might end up serving a shorter sentence than he did, he is entitled to complain on equal protection grounds. This argument conveniently ignores the part of the standard, however, which requires that persons be similarly situated *with respect to the purpose* of the law.

"We are not persuaded, as petitioner contends, that the purpose of section 2933 was to enable all persons who committed voluntary manslaughter within a certain period of time be afforded the opportunity to reduce their sentences by one-half. The obvious purpose of the new section is to affect the behavior of inmates by providing them with incentives to engage in productive work and maintain good conduct while they are in prison. Under the new statutory scheme, a prisoner will no longer receive credit only for good behavior; he must work. The opportunity to opt under section 2931 is not open to anyone whose crime was committed on or after January 1, 1983. In any event, under the new section, the full six-month credit reduction will be awarded only after an inmate has worked six months in a qualifying program.

"It is fair to observe that this incentive purpose has no meaning if an inmate is unaware of it. The very concept demands prospective application." (*In re Strick, supra,* 148 Cal.App.3d at pp. 912-913.)

Similarly, the court in *In re Bender* stated: "Good time credits are designed to encourage conformity to prison regulations and discourage crim-

inal activity while in custody. [Citations omitted.] Participation or work credits, on the other hand, are intended to induce inmate productivity as well as rehabilitation. Passive good behavior is no longer the *sine qua non* of incarceration. Therefore Bender and his hypothetical defendant are not similarly situated, since the distinction between the classes is not merely date of delivery to the Department, but reflects instead a subtle but distinct change in the philosophy of earning credits." (*In re Bender, supra,* 149 Cal.App.3d at p. 387.) Moreover, the court in *Bender* went on to hold that, even if defendant had shown he was similarly situated to a hypothetical defendant committed to prison on or after January 1, 1983, the equal protection analysis thus triggered would apply the rational-basis standard as opposed to the more onerous strict-scrutiny test. The court noted that the provisions affording a sentenced defendant a reduction in the time served, whether for work participation or conduct, were amelioratory as opposed to effecting a fundamental deprivation of liberty, and thus the rational-basis test was the appropriate standard for reviewing the challenged legislation on equal protection grounds. The court concluded, "[w]e find the prospective only application of section 2933 does not constitute a denial of equal protection. To hold otherwise would mean the Legislature could never ameliorate prison sentences without applying the new rules to every 'similarly situated' prisoner in the State of California. Such a result is anomalous and clearly unsupported by current law." (*Id.,* at p. 390.)

We agree with the court in *In re Bender, supra,* 149 Cal.App.3d 380 that section 2933, expressly conferring a privilege, not a right, upon prisoners sentenced to state prison and clearly intended by the Legislature to be amelioratory, does not effect a fundamental deprivation of liberty requiring a strict-scrutiny analysis. Even were such a review required, we believe it equally clear that the *rehabilitative* purpose to be achieved by actual participation in a qualified work incentive program constitutes a compelling state interest, and the statutory restriction on the availability of one-for-one credits under section 2933 to persons sentenced and committed to state prison a necessary means to achieve this end. As the court pointed out in *People* v. *Davis, supra,* 154 Cal.App.3d at page 255: " '[T]he state [cannot] presume to rehabilitate persons clothed in the presumption of innocence.' [Citation omitted.]" The passive good behavior which is no longer enough to entitle *sentenced prisoners* to credits when work programs are available is still sufficient to entitle felon-detainees to credit equal to one-third of the time actually confined prior to sentence pursuant to the amendment to section 4019 enacted at the same time as section 2933. To award one-on-one credit to those felon-detainees even though they have not actually participated in a qualified work incentive program would substantially undermine the legislative purpose of section 2933 to provide structured work experience for

sentenced prisoners to aid in their rehabilitation and increase their chances for successful reintegration into the mainstream of society.

Thus, because the credits available under section 2933 are not an automatic entitlement, defendant's *Sage* analysis is not persuasive. It is clear from the Supreme Court's holding in *People* v. *Austin, supra,* 30 Cal.3d 155, that, absent the virtual automatic entitlement available under section 4019, a claim to increased credits on equal protection grounds need not be granted in every conceivable situation, and in evaluating defendant's claim of denial of equal protection, we find no constitutional infirmity in the procedures established by section 2933. Any distinction between defendant and the hypothetical class he has advanced is not invidious; it is closely tied to the compelling state interest in the rehabilitation of sentenced prisoners, and it therefore does not constitute a denial of equal protection.

On the sole issue that defendant was denied the rights afforded to him by the decision in *People* v. *Arbuckle, supra,* 22 Cal.3d 749, this matter is remanded to the trial court to provide defendant the opportunity to file, within 30 days after our remittitur, a written request that he be sentenced by Judge Bianchi, based upon a supplemented probation report and in accordance with the terms of the original plea bargain. If Judge Bianchi is unavailable to sentence defendant within 30 days after he files his written request, defendant should be given the option, at that point, of either withdrawing his plea, with a concomitant right in the prosecution to reinstate the charges dismissed pursuant to the plea bargain, or of accepting the sentence imposed by Judge Osborn (with credit for the time already served as well as his present parole status). In all other respects, the judgment is affirmed.

Woolpert, Acting P. J., and Martin, J., concurred.

A petition for a rehearing was denied July 17, 1984, and appellant's petition for a hearing by the Supreme Court was denied September 27, 1984. Broussard, J., and Reynoso, J., were of the opinion that the petition should be granted.