168 Cal.App.3d 311 (1985)
214 Cal. Rptr. 93
THE PEOPLE, Plaintiff and Respondent,
v.
RUSSELL DUANE RUHL et al., Defendants and Appellants.
Docket No. 13213.
Court of Appeals of California, Third District.
May 16, 1985.
*312 COUNSEL
Bryan Kemnitzer and Frank O. Bell, Jr., State Public Defender, under appointments by the Court of Appeal, Christine Zilius, Deputy State Public Defender, and Danny Joseph Duchene, in pro. per., for Defendants and Appellants.
John K. Van de Kamp, Attorney General, Roger E. Venturi and Anthony L. Dicce, Deputy Attorneys General, for Plaintiff and Respondent.
[Opinion certified for partial publication.[*]]
OPINION
SIMS, J.
In People v. Arbuckle (1978) 22 Cal.3d 749 [150 Cal. Rptr. 778, 587 P.2d 220, 3 A.L.R.4th 1171], our Supreme Court held, as a general *313 principle, whenever a judge accepts a plea bargain and retains sentencing discretion under the agreement, an implied term of the bargain is that sentence will be imposed by that judge. (Pp. 756-757; see also In re Mark L. (1983) 34 Cal.3d 171, 177 [193 Cal. Rptr. 165, 666 P.2d 22].) In People v. Rosaia (1984) 157 Cal. App.3d 832 [203 Cal. Rptr. 856], the Fifth District Court of Appeal adopted a rule requiring that where a defendant has a right under Arbuckle to be sentenced by the judge who accepts a negotiated plea of guilty, the record of proceedings in the trial court must demonstrate the defendant's knowledge of his Arbuckle right before there can be a valid waiver of the right. (22 Cal.3d at p. 840.)
In this case, we hold that where a defendant entered into a detailed, comprehensive written negotiated plea agreement before the time set for his preliminary hearing in municipal court, and the agreement did not specify that the judge who took his plea would sentence him, defendant had no right under Arbuckle to be sentenced by the superior court judge who ultimately took his plea. We further conclude that, even assuming arguendo defendant had an enforceable Arbuckle right, he waived it by his failure to assert it in the trial court. In our view, the rule of People v. Rosaia, supra, should be applied prospectively only to sentences imposed after Rosaia became final.

FACTUAL AND PROCEDURAL BACKGROUND[1]
On August 8, 1981, Mohammad Ali asked defendant Ruhl to kill Ali's brother-in-law, Mohammad Alamgir, for $400. Ruhl asked defendant Danny Joseph Duchene to assist him in the murder. About 5 a.m. the two, armed with knives, drove to a squash field where they knew Alamgir would be working. They observed Alamgir and another man working in the field. Defendants approached the two and engaged them in conversation. Defendants withdrew a short distance away and agreed that both men would have to be killed. Defendants returned and, after a struggle, killed both men with their knives.
In October 1982, a complaint was filed charging both defendants with first degree murder (Pen. Code, § 187)[2] and alleging special circumstances, i.e., that as to each defendant the murders were intentional and carried out for financial gain (§ 190.2, subd. (a)(1)) and that defendants have been convicted of more than one offense of murder. (§ 190.2, subd. (a)(3).)
On October 21, 1982, defendants and their attorneys met in a conference room at the Sutter County jail with the District Attorney of Sutter County *314 and several representatives of the Sutter County Sheriff's office. The meeting was transcribed by a court reporter and is part of the record.
At the meeting, after appropriate explanations and advisements, each defendant entered into a six-page written negotiated plea agreement with the district attorney. The agreements were substantially identical. Each defendant essentially agreed to waive preliminary examination and to testify truthfully at the preliminary examination of Mohammad Ali. In the event defendant so testified, the district attorney agreed to file an information in superior court charging two counts of first degree murder but no special circumstances. Each defendant further agreed to enter a plea to the aforementioned information, to testify at any trial of Ali, and to waive time for sentencing so that sentence would be imposed after he had completed all testimony required in the criminal proceedings against Ali.
The agreement provided further in relevant part, "The District Attorney further agrees that he will not urge that the sentences for the two counts of first degree murder be served consecutively unless such consecutive sentencing is recommended by the Probation Department in their report to the Court in connection with judgment and sentence. [Defendant] understands that consecutive sentence [sic] for the two counts of first degree murder may be imposed by the Court on the Court's own motion irrespective of whether the District Attorney does or does not argue for such position."
Each agreement also recited, "there have been no ... promises, no representations of any kind made to [defendant] to induce his participation in this negotiated plea and Memorandum of Understanding other than those that are contained specifically within this written agreement...."
On October 29, 1982, defendants appeared in municipal court and waived preliminary examination. The written agreements with the district attorney were admitted into evidence. Defendants were ordered to appear as witnesses at Ali's preliminary hearing and, thereafter, to appear for arraignment in superior court.
Defendants apparently having satisfied their obligation to testify at Ali's preliminary hearing, an information was filed November 12, 1982, charging each defendant with two counts of first degree murder without special circumstances.
On November 15, 1982, both defendants pled guilty before Judge Keeley to two counts of first degree murder as charged in the information. At the conclusion of that hearing, each defendant waived time for sentencing so *315 that each could testify at the trial of Ali, all in accordance with the written agreements.
Defendants were sentenced on different days in August 1983 by Judge Steel. Defendant Ruhl made no objection to being sentenced by Judge Steel.
In accordance with the recommendation of the probation department, each defendant received consecutive sentences on the two counts of murder. (See § 669.)
Both defendants appeal and contend: (1) because constitutional guarantees of equal protection of the laws require that the procedural safeguards of the determinate sentencing law (DSL) apply to indeterminate sentences, they were prejudiced because the trial court allegedly failed to follow rules for sentencing under the DSL; (2) the court erred in imposing consecutive sentences; and (3) they were entitled to have their presentence custody credits calculated pursuant to the provisions of section 2933. In an unpublished portion of this opinion, we reject these contentions. Defendant Ruhl also contends he was denied his rights under People v. Arbuckle, supra, 22 Cal.3d 749 when he was sentenced by Judge Steel rather than by Judge Keeley who had accepted his plea.

DISCUSSION

I[*]
.... .... .... .... .... .... .

IV
(1) It is not always an implied term of a plea bargain that the judge who accepts the plea will impose the sentence; rather, the record must affirmatively demonstrate some basis upon which a defendant may reasonably expect that the judge who accepts the plea will retain sentencing discretion. (In re James H. (1985) 165 Cal. App.3d 911, 919-920 [212 Cal. Rptr. 61].)
Here, there is no basis for any reasonable expectation by defendant Ruhl that Judge Keeley would retain sentencing discretion. The detailed, written plea agreement expressly set forth all terms of the agreement; sentencing by Judge Keeley was not one of the agreed terms. Moreover, when Judge Keeley took defendant's plea, he gave no indication that he would be the *316 sentencing judge. Nor could such be fairly implied from the circumstances since, by agreement, the sentencing was to be continued until after Ali's trial  a necessarily indefinite period of postponement during which judicial assignments could reasonably be expected to change.
Finally, a fundamental purpose of the Arbuckle rule would not be served by its application here. One reason Arbuckle implies (as a "general principle") a right to be sentenced by the judge taking the plea is because the propensity in sentencing demonstrated by a particular judge is often an inherently significant factor in a defendant's decision whether to plead guilty. (People v. Arbuckle, supra, 22 Cal.3d at p. 757.) Here, the circumstances make clear that defendant Ruhl decided to plead guilty well before he ever got to superior court; the identity of the judge taking his plea clearly did not influence his decision. (See People v. Miskiewicz (1984) 158 Cal. App.3d 820, 825 [204 Cal. Rptr. 873].)
We conclude defendant had no right under Arbuckle to be sentenced by Judge Keeley; Judge Steel's sentence was lawfully imposed. However, even assuming arguendo defendant had a right under Arbuckle to be sentenced by Judge Keeley, we conclude defendant waived his right.
When defendant was sentenced in 1983, the law uniformly provided a defendant had to assert his Arbuckle right in the trial court or he waived it. (People v. West (1980) 107 Cal. App.3d 987, 992 [165 Cal. Rptr. 24]; see People v. DeJesus (1980) 110 Cal. App.3d 413, 417-418 [168 Cal. Rptr. 8].) In 1984, in People v. Rosaia, supra, 157 Cal. App.3d at page 840, the Fifth District Court of Appeal adopted a rule "requiring ... that the record demonstrate the defendant's knowledge of his Arbuckle rights to support a conclusion that defendant waived those rights by his conduct." (Italics in original.) The record in the instant case does not demonstrate defendant Ruhl's knowledge of any Arbuckle rights.
(2) However, Rosaia's authors stated expressly, "[W]e intend the rule to be prospective only." (Id., at p. 835.) We will be faithful to that intent.[6]
In People v. Guerra (1984) 37 Cal.3d 385 [208 Cal. Rptr. 162, 690 P.2d 635] our Supreme Court recently reexamined the guidelines by which a new rule promulgated by judicial decision is given prospective or retroactive effect. The court acknowledged that there exists a "narrow class of decisions" in which justifiable reliance on an old rule will justify prospective application of the new rule on grounds of policy. (Id., at p. 401.) In determining *317 whether to give a new rule prospective application, our task is first to examine whether the purpose of the new rule points plainly towards retroactivity or prospectivity. (Ibid.) Where the primary purpose of a new rule is to promote reliable determinations of guilt or innocence, so that the truth-finding function of trial is protected, the new rule should ordinarily be given retroactive effect. (Ibid.; cf. In re Love (1974) 11 Cal.3d 179, 188 [113 Cal. Rptr. 89, 520 P.2d 713].) If the question of retroactivity is a close one after the purpose of the new rule is considered, only then should we consider the extent of reliance on the old rule and the effect on the administration of justice of a retroactive application of new standards. (Id., at p. 402.)
We conclude that, by the first of these standards  the reason for the rule  Rosaia should be given prospective effect. The rule has no bearing on the truth-finding function of trial. As is evident from the instant case, whether a defendant expressly waives his right to be sentenced by the judge who takes his plea has no effect on his guilt or innocence: with or without a demonstration of defendant's knowledge of his Arbuckle right on the record, defendant's guilt is admitted by his plea.[7] While Rosaia promulgates a rule that will ultimately serve the administration of justice by quieting claims of Arbuckle ignorance, the rule is collateral to a fair determination of guilt or innocence and deserves prospective application. (See People v. Colvin (1981) 114 Cal. App.3d 614, 628 [171 Cal. Rptr. 32]; see also Donaldson v. Superior Court (1983) 35 Cal.3d 24, 38-39 [196 Cal. Rptr. 704, 672 P.2d 110]; In re Joe R. (1980) 27 Cal.3d 496, 511 [165 Cal. Rptr. 837, 612 P.2d 927]; People v. Kaanehe (1977) 19 Cal.3d 1, 10 [136 Cal. Rptr. 409, 559 P.2d 1028]; In re Johnson (1970) 3 Cal.3d 404, 412-413 [90 Cal. Rptr. 569, 475 P.2d 841] and authorities there cited.) Nor is a defendant who has, in fact, been uninformed of his Arbuckle right left without a remedy. (See In re Thomas S. (1981) 124 Cal. App.3d 934 [177 Cal. Rptr. 742].)
We conclude Rosaia applies only to sentencings that have occurred on and after September 28, 1984, when Rosaia was final.[8] Because defendant *318 Ruhl was sentenced before that date, Rosaia is inapplicable. Thus, because defendant failed to object to being sentenced by Judge Steel, for purposes of this appeal he waived his right to be sentenced by Judge Keeley. (People v. West, supra, 107 Cal. App.3d at p. 992.)
Anticipating this conclusion, defendant Ruhl argues that trial counsel was incompetent for failing to request a transfer to the judge who accepted his plea. (See People v. Pope (1979) 23 Cal.3d 412 [152 Cal. Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) However, upon this record, we are unable to divine counsel's reason for proceeding before Judge Steel. (See People v. West, supra, 107 Cal. App.3d at p. 992.) In such circumstances, we may not second-guess trial counsel. (People v. Pope, supra, 23 Cal.3d at p. 426; see In re Thomas S., supra, 124 Cal. App.3d at p. 943.)

DISPOSITION
As to each defendant, the judgment of conviction is affirmed.
Carr, Acting P.J., and Sparks, J., concurred.
The petition of appellant Duchene for review by the Supreme Court was denied August 14, 1985.
NOTES
[*] Pursuant to rule 976.1 of the California Rules of Court, all portions of this opinion shall be published except parts I, II and III of the Discussion.
[1] The facts, about which there is no dispute, are taken from the probation reports.
[2] Further statutory references are to the Penal Code.
[*] See footnote, ante, page 311.
[6] Although this conclusion is strictly dictum, we think the trial courts may like to know, even by way of dictum, how we view Rosaia.
[7] Nor is there any danger, in the absence of Rosaia's rule, that the trial court was unaware of its sentencing discretion. (Cf. People v. Belmontes (1983) 34 Cal.3d 335, 348, fn. 8 [193 Cal. Rptr. 882, 667 P.2d 686].)
[8] Rosaia was filed by the Fifth District Court of Appeal on June 26, 1984. (157 Cal. App.3d at p. 832.) It became final as to the Court of Appeal 30 days later since no rehearing was granted. (Cal. Rules of Court, rule 24.) However, for purposes of precedential value and reliance by trial courts, the case became final only after the Supreme Court denied a hearing, which it did on September 27, 1984. (See Stetson v. Sheehan (1921) 186 Cal. 334, 335 [200 P. 392].) Since trial courts could not reasonably be expected to apply the rule of Rosaia on the same day the Supreme Court denied a hearing, the next day  September 28, 1984  is the earliest date the case should be given precedential value. We note that rules of court applicable to obtaining review by the California Supreme Court have been amended extensively (eff. May 6, 1985) to implement Proposition 32, enacted at the 1984 General Election, to allow review of selected issues in a decision of a Court of Appeal. However, we do not believe the new rules affect the foregoing rules of finality of a Court of Appeal opinion where the Supreme Court denies review.