Filed 9/6/13  P. v. Clarkebey CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E054547 |
| v. | (Super.Ct.No. SWF10000120) |
| RICHARD EUGENE CLARKEBEY, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Jeffrey Prevost, Judge.

Affirmed as modified.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and

Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney

General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Lise S.

Jacobson, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Richard Eugene Clarkebey appeals after he was

convicted at his first trial of battery on a police officer (Pen. Code, § 243, subd. (b)); and

1

at his second trial of driving under the influence of alcohol and causing injury to another person (Veh. Code, § 23153, subd. (a)) and driving with a blood-alcohol level above 0.08 percent (Veh. Code, § 23153, subd. (b)).  Defendant contends that the trial court erred in declining to exercise its discretion to dismiss defendant's strike prior; the abstract of judgment should be corrected to show a stayed sentence on one of the counts; the court improperly stayed, rather than striking, a prior prison term enhancement; and defendant should be awarded additional days of presentence conduct credits.  We reject the contentions with respect to dismissal of defendant's strike prior and the award of additional conduct credits.  However, we order the sentence modified to strike the prison term prior, and we order the abstract of judgment corrected to reflect a stay of the sentence on count 2.  With these minor modifications, the judgment is otherwise affirmed.

FACTS AND PROCEDURAL HISTORY

On January 2, 2010, defendant was driving his truck in Hemet.  Angela Selby and Graciela Garcia were passengers in defendant's truck.  Defendant drove through a red light and collided with an SUV driven by Michelle Padilla.  Defendant was driving at such a high rate of speed that the force of the impact spun his truck around; defendant's truck then collided with another car, driven by Charles Jefferson, and finally struck a third car driven by Anthony Valdez.

Another motorist who witnessed the accident, Jessica Henderson, called for emergency services.  Valdez, whose car had been struck, got to defendant's truck within five seconds.  He saw defendant in the driver's seat.  Padilla, whose SUV had been struck

2

first, saw defendant slumped over the steering wheel of his truck. Padilla's passenger, Colleen Patterson-Musser, also saw defendant behind the steering wheel of the truck. A community service officer who responded found defendant seated in the driver's seat of the truck.

Emergency personnel took defendant to the hospital. At the hospital, Hemet police officer Eric Goodwyn spoke to defendant. Officer Goodwyn asked defendant if he had been driving the truck. Defendant stated, "Yeah, look at my nose." Defendant had a cut on the bridge of his nose. Defendant claimed that another car had collided with him. During the interview, Officer Goodwyn smelled alcohol on defendant's breath, and noticed that defendant's eyes were bloodshot and watery. Officer Goodwyn asked defendant if he had been drinking. Defendant admitted to drinking one beer.

Defendant agreed to a breathalyzer test. The first reading showed a blood-alcohol level of 0.223 percent, and the second reading showed 0.231 percent. A blood test showed a blood-alcohol level of 0.23 percent. A forensic toxicologist testified that a person's ability to make decisions and the reaction time to stimuli are severely impaired at that level of intoxication; a person intoxicated at that level would be unable to operate a motor vehicle safely.

Defendant was asleep or passed out when his blood was drawn by the phlebotomist. A nurse later approached defendant to take another blood sample. Defendant yelled, "You're not taking my blood," and began to swing his arms violently.

3

Officer Goodwyn and another officer each grabbed one of defendant's arms to restrain him. Defendant bit Officer Goodwyn's hand.[1]

Angela Selby, a passenger in defendant's truck, sustained some bruising to her elbow and leg from the collisions. Her elbow and leg hurt for about two weeks after the accident. It hurt her to extend her elbow, and it hurt "just a little bit" to walk.

Padilla, the driver of the SUV defendant struck, suffered several injuries. Padilla, a registered nurse, had difficulty performing some of her duties after the accident because of pain in her right arm. Some of the fingers on her right hand were numb and she had difficulty raising her right arm. The numbness in Padilla's hand lasted six to eight weeks. The pain in her shoulder persisted for about three months. The remainder of the pain in her arm lasted approximately six months. She still had residual effects at the time of trial, and needed to relax her hand occasionally during the day.

Padilla's daughter Marissa was a passenger in the SUV. After the accident, Marissa had low back pain after sleeping or standing for more than about one minute. Her neck was also sore for three to six months after the collision. Turning her neck was painful, which made driving difficult. She also had pain in her knee and limped for several weeks after the accident.

Colleen Patterson-Musser, another passenger in Padilla's SUV, had pain in her shoulder for about two months after the collision. The shoulder was bruised, swollen,

---

[1] The evidence described in this paragraph was presented at defendant's first trial, which resulted in his conviction of battery on a peace officer. No evidence concerning that offense was admitted at defendant's second trial on the main charges.

and tender to the touch. She also sustained a lump on the back of her head and suffered from headaches for a couple of days after the accident.

Charles Jefferson, the driver of the second vehicle struck by defendant, had pain in his neck for about a month after the accident. He received physical therapy treatments. He also had back pain from standing after the collision. Although he had taken medication for back pain prior to the accident, his neck and back had not bothered him immediately before the collision.

Anthony Valdez was not injured in the accident, but defendant's truck dented the door of his car.

After these events, defendant was charged by a first amended information with one count of driving under the influence of alcohol causing injury (count 1), one count of driving with a blood-alcohol level over 0.08 percent (count 2), resisting an officer with force or violence (count 3), and battery of a police officer (count 4). As to count 1, the information alleged that defendant had injured five additional victims.[2] (Veh. Code, § 23558.) As to count 2, it alleged that defendant had a blood-alcohol concentration of 0.15 or greater. (Veh. Code, § 23578.) The information further alleged that defendant had suffered four prior prison terms, and one prior strike conviction.

The first trial took place in April 2011. The first jury found defendant guilty of battery on a police officer (biting Officer Goodwyn). It was unable to reach verdicts on

---

[2] The trial court later dismissed the allegation as to one of the five additional victims.

any of the other charges. The trial court declared a mistrial on counts 1, 2 and 3, and then dismissed count 3 (resisting a police officer) in the interests of justice.

In August 2011, a second jury convicted defendant of the two remaining charges in counts 1 and 2. The jury also found true the allegations of injury to the four additional victims, and the allegation that defendant was driving with a blood-alcohol level of 0.15 percent or higher. Defendant also admitted the prior conviction allegations (prior prison terms and strike prior) to the court.

Defendant asked the court to exercise its discretion to dismiss his strike prior under Penal Code section 1385. The trial court declined to do so, finding that defendant came within the spirit of the three strikes law.

The court sentenced defendant to the middle term of two years on count 1 (DUI with injury), doubled to four years as a second striker. The court added three years (one year for each of three victim-injury enhancements). The court imposed a concurrent term of one year in the county jail on count 4 (battery on a police officer). The court also added three one-year prison term priors. The court stayed sentence as to count 2, stayed sentence as to the fourth victim-injury enhancement on count 1, and stayed the fourth prior prison term enhancement. Defendant's total prison sentence was 10 years. The court awarded defendant 933 days of presentence custody credits, consisting of 623 actual days in custody plus 310 days of conduct credits. The court imposed a $500 restitution fine, a $500 parole revocation fine, $120 in court security fees, and $90 in conviction assessments.

Defendant now appeals.

6

ANALYSIS

## I.  The Trial Court Did Not Abuse Its Discretion in Declining to Dismiss Defendant's Strike Prior

Defendant asked the trial court to exercise its discretion to dismiss the strike prior, pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 504.  The trial court declined to dismiss the strike prior, expressing some concern that defendant took no responsibility for his actions, as well as noting that although defendant's record consisted mostly of substance abuse related offenses, he did have difficulty staying out of trouble, and had been returned to custody numerous times.

Defendant now urges that the court abused its discretion in refusing to dismiss the strike prior, because it gave insufficient consideration to all the relevant factors, including defendant's "obvious" mental illness.

Defendant points to information in the probation report indicating that he suffers from a bipolar disorder and scoliosis.  Defendant had been prescribed several medications, including antipsychotic drugs used to treat bipolar disorder, and antidepression medications.  Defendant stopped taking his prescribed medications in 2003.  Defendant instead began to self-medicate with alcohol and illegal drugs. Defendant's only strike offense—an arson conviction in 1983—was over 25 years old by the time he had committed the current offenses.  When defendant pleaded guilty in the arson case, he had been granted probation.

In the intervening 25 years since his strike conviction, defendant had not committed another serious or violent felony.  All but one of the convictions he suffered

7

after the strike conviction were drug- or alcohol-related. Defendant was 53 years old at the time of sentencing. Defendant had been free from custody for almost three years at the time of the accident leading to his current convictions.

Appellate counsel also points to defendant's unusual behavior in court during these proceedings. In the first trial, defendant was briefly removed from the courtroom when he interrupted the proceedings. While a community service officer was testifying, defendant burst out, "They [are] trying to send me to prison for 16 years over a fender bender!" He then accused all the witnesses of lying, saying that they were just trying to collect insurance money.

Defendant also made several motions to substitute counsel (*People v. Marsden* (1970) 2 Cal.3d 118) or to represent himself (*Faretta v. California* (1975) 422 U.S. 806 [95 S.Ct. 2525, 45 L.Ed.2d 562]). Ultimately, defendant surrendered his right to represent himself, and the public defender was appointed. During one of the *Marsden* hearings, defendant informed the court that his theory of the defense was that the two passengers in his truck had kidnapped him, and that he was not driving at the time of the accident. In his postconviction interview with the probation department, defendant maintained that his passengers had "set [him] up." They knew defendant was drunk, but got him dressed and put him in the back of the truck. One of the women was driving the truck when the accident happened. At the scene, someone told defendant, "Move your truck." Defendant, worried about his truck, told his passenger to move over, and only then did he get into the driver's seat. He claimed he cut his nose on the edge of the door when he got into the front seat. That was why defendant was sitting in the driver's seat

8

when police arrived. Defendant told the probation officer that he was the victim of a conspiracy. Defendant said that Officer Goodwyn intimidated all the witnesses into testifying falsely that defendant was driving at the time of the accident. Defendant also told the probation officer that Officer Goodwyn had planted evidence. Defendant claimed that his lawyer was protecting the police.

Defendant urges that the trial court abused its discretion by failing to properly weigh all of the relevant factors: "[S]ince all discretionary authority is contextual, those factors that direct similar sentencing decisions are relevant, including 'the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, or his traits of character as evidenced by his behavior and demeanor at the trial.' [Citations.]" (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 978.) The *Alvarez* court also indicated that, "[w]hen appropriate, judges should also consider the general objectives of sentencing . . . ." (*Ibid*.) California Rules of Court, rule 4.410, describes the general objectives of sentencing: "(a)(1) Protecting society; [¶] (2) Punishing the defendant; [¶] (3) Encouraging the defendant to lead a law-abiding life in the future and deterring him or her from future offenses; [¶] (4) Deterring others from criminal conduct by demonstrating its consequences; [¶] (5) Preventing the defendant from committing new crimes by isolating him or her for the period of incarceration; [¶] (6) Securing restitution for the victims of crime; and [¶] (7) Achieving uniformity in sentencing. [¶] (b) Because in some instances these objectives may suggest inconsistent dispositions, the sentencing judge must consider which objectives are of primary importance in the particular case. The sentencing judge

9

should be guided by statutory statements of policy, the criteria in these rules, and the facts and circumstances of the case."

Defendant suggests that the trial court failed to conduct the proper balancing between the defendant's constitutional rights, including guaranties against disproportionate punishment under the Eighth Amendment, and society's legitimate interests, including the fair prosecution of properly charged crimes. (See *People v. Marshall* (1990) 50 Cal.3d 907, 938; *People v. Williams* (1998) 17 Cal.4th 148, 160; *People v. Superior Court* (*Romero*), *supra*, 13 Cal.4th 497, 530.) "Specifically," defendant urges the court "failed to give any credence to the fact that none of the present offenses are serious or violent; that no one suffered great bodily injury as a result of the accident; that [defendant] clearly has a drug and alcohol problem; that [defendant] unquestionably suffers from mental illness; that he has not taken his prescription psych medications since 2003; and that [defendant's] punishment can be relatively severe even without a second strike sentence—a maximum sentence of eleven years at fifty percent for a drunk driving accident where no one died or even suffered great bodily injury is severe. Surely, such a lengthy non-strike sentence for a fifty-three year old man who suffers from mental illness and drug/alcohol addiction is more than sufficient to protect society."

We are not persuaded. The trial court properly exercised its discretion in declining to dismiss defendant's strike prior. The strike prior was for the arson of an inhabited dwelling, for which he was convicted in 1984. Defendant also had a 1995 conviction for assault with a deadly weapon. Aside from these two convictions, however, defendant's

10

prior convictions related to drug or alcohol abuse. The court considered the instant offense a "kind of a hybrid," involving both substance abuse and conduct that presented an active danger to the community. The court also noted that defendant had performed poorly when out of custody or on parole. Defendant evidently had "a difficult time staying out of trouble," and he had "numerous returns to custody" for parole violations. The court stated, "In balance . . . and upon reflection, at this time I cannot say that I find that [defendant] falls without the spirit of the three-strikes law. He is your classic recidivist, and it would seem to me that at least at this point, even if I were inclined to grant the motion, I don't think I could make findings that would survive an appeal by the People in this matter."

Penal Code section 1385 authorizes a trial court to strike factual allegations related to sentencing; this authority extends to prior felony convictions, including prior felony strike convictions. (See *People v. Superior Court* (*Romero*), *supra*, 13 Cal.4th at p. 504.) The court's power to dismiss a strike under Penal Code section 1385 is not absolute, but is rather limited. (*People v. Carmony* (2004) 33 Cal.4th 367, 377-378.) In determining whether to dismiss a strike conviction "in furtherance of justice" (Pen. Code, § 1385, subd. (a)), the court should consider the nature and circumstances of the present offenses, any prior serious or violent felony, and a defendant's background, character and prospects, in order to determine whether or not the defendant should be deemed to fall outside the spirit of the three strikes law. (*People v. Williams*, *supra*, 17 Cal.4th at p. 161.) Only in a rare or extraordinary case could a career criminal be deemed to fall outside the spirit of the three strikes recidivist sentencing scheme. (*Carmony*, at p. 378.)

11

A court will not be found to have abused its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it. (*Id*. at p. 377.)

Defendant here has identified no such extraordinary circumstances placing him outside the spirit of the three strikes law. All the circumstances to which defendant points were brought out in the probation report and in the papers filed urging the court to dismiss the strike prior. The court fully considered both documents. This is not a case in which the trial court mistakenly misunderstood its discretion, or mistakenly believed that it had no discretion to dismiss the strike prior. (See, e.g., *People v. Banks* (1997) 59 Cal.App.4th 20, 23-24.)

The court did address the age of defendant's strike prior, recognizing that it had occurred a number of years earlier. However, it found the circumstances of the strike prior "pretty horrible." Defendant had become "fed up" with his relatives taking money or personal property from him, or using his personal property in a manner he found insulting; in retaliation, he smashed the car window of one relative, and set the back porch of his mother's residence on fire. Defendant was living in the house with other family members at that time.

In 1995, defendant had committed another assaultive crime, attacking a man at a bus stop with a pipe. Defendant was sentenced to prison for three years for that offense. When defendant was released on parole, his parole was revoked and he was returned to custody three times. He was finally discharged from parole in 2005, about 10 years after the conviction.

12

Defendant had difficulty on parole and probation in connection with intervening offenses, and was also returned to custody several times before finally being discharged in 2007.

Although defendant was 53 years old at the time of sentencing in this case, he still lacked maturity or impulse control. Prior incarcerations had done little to stem the commission of new crimes. Defendant had twice entered drug treatment programs to address his drug and alcohol problems, but he was terminated from both programs for assaultive behavior. Defendant's background, character and prospects were poor, and did not place him outside the letter or spirit of the three strikes law. Defendant had not benefited from leniency, guidance, treatment, supervision, or punishment in the past.

It was a mere fortuity that defendant's conduct in the instant case had not caused grievous injury or death. He was severely alcohol-impaired when he ran a red light and collided with three other vehicles. Defendant's conduct was reckless in the extreme, showing a callous disregard for the safety of others.

At the hospital after the accident, defendant was forthright enough when Officer Goodwyn asked if he had been driving the truck: defendant replied, "look at my nose." When Officer Goodwyn asked defendant if he had been drinking, defendant claimed he had drunk only one beer. Although defendant could not very well deny that he had consumed any alcohol, he attempted to minimize his culpability. His later claims that he had been framed, or that he was a victim of collusion and conspiracy, were created long after the fact. Defendant's outburst at the first trial could have been as well deliberately calculated to taint the trial as the product of mental illness. All in all, the circumstances

13

bespeak defendant's willingness to lie, minimize, misdirect, and otherwise deflect any responsibility for his actions from himself.

Defendant has failed to carry his burden of demonstrating that the trial court's decision, declining to dismiss defendant's strike prior, was arbitrary or irrational. (*People v. Carmony*, *supra*, 33 Cal.4th 367, 376.) "[C]ircumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record . . . .'" (*Id*. at p. 378.) Defendant has shown no such circumstances here. Defendant is, in fact, a career criminal who has repeatedly shown himself unable to refrain from committing crimes. Although he has only one prior conviction for assault, he has a lengthy history of assaultive behavior. He is precisely the kind of person to whom the three strikes law was intended to apply. The trial court's determination not to dismiss the strike prior is not a decision with which no reasonable person would agree. (*Id*. at p. 377.)

## II. The Abstract of Judgment Should Be Corrected to Reflect That the Sentence on Count 2 Was Stayed Under Penal Code Section 654

As defendant notes, Penal Code section 654 prohibits the imposition of multiple sentences for the same criminal act. Here, defendant was convicted in count 1 of driving under the influence causing injury and in count 2 of driving with a blood-alcohol level of 0.08 percent or greater. Both these convictions are based on the same act of drunk driving. Imposition of sentence on both counts violates Penal Code section 654. The parties and the court recognized that the sentence on count 2 should be stayed, and the

14

court expressly stated that it ordered the sentence on count 2 to be stayed. However, the abstract of judgment indicates that the court imposed a concurrent sentence on count 2.

This court may order the correction of this clerical error in the abstract of judgment. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185.) We direct that the minutes of the sentencing hearing and the abstract of judgment be corrected to reflect that the trial court stayed the sentence imposed as to count 2, pursuant to Penal Code section 654.

III.  The Trial Court Should Have Stricken, Rather Than Stayed, the Imposition of a One-year Prior Prison Term Enhancement

The information charged defendant with four enhancements for prior prison terms. All the allegations were found true. The trial court imposed one-year enhancements for three of the prison term priors, but purported to stay imposition of a one-year term on the fourth prison term prior.

Defendant points out, and the People agree, that an enhancement under Penal Code section 667.5 may not be stayed. If the allegation has been found true, it must be either imposed or stricken. (See *People v. White Eagle* (1996) 48 Cal.App.4th 1511, 1521.) Staying a prior prison term enhancement is an unauthorized sentence, which this court may correct on appeal. (*Ibid*.)

The record here makes clear that the trial court did not intend to impose sentence on the fourth prison term prior. Accordingly, we order that term stricken, rather than stayed, and order the abstract of judgment amended accordingly.

IV.  Defendant Is Not Entitled to Additional Presentence Conduct Credits

Penal Code section 4019 has been amended numerous times in recent years. Before January 25, 2010, inmates were able to earn two days of conduct credits for every four days of actual custody during presentence confinement in local custody.  (Former Pen. Code, § 4019, subd. (f), as amended by Stats. 1982, ch. 1234, § 7, pp. 4553, 4554.) Effective January 25, 2010, the Legislature amended Penal Code section 4019 to provide that, with a few exceptions, most inmates would be able to earn two days of conduct credits for each two days of actual custody.  (Stats. 2009, 3d Ex. Sess. 2009-2010, ch. 28, § 50.)  Nine months later, effective September 28, 2010, the Legislature again amended Penal Code section 4019, restoring the six-for-four credits previously provided pre-January 25, 2010.  (Stats. 2010, ch. 426, §§ 1, 2, 5.)

Most recently, the Legislature again amended Penal Code section 4019, to provide for two days credit against each four-day period of confinement in local custody.  (Pen. Code, § 4019, subds. (b), (c).)  The Legislature expressed its intent that, if all days are earned under Penal Code section 4019, a term of four days will be deemed to have been served for each two days in actual custody.  (Pen. Code, § 4019, subd. (f).)  This version of Penal Code section 4019 became operative on October 1, 2011.  (Stats. 2011, ch. 39, § 53.)

Penal Code section 4019, subdivision (h), provides expressly that, "The changes to this section enacted by the act that added this subdivision shall apply prospectively and shall apply to prisoners who are confined to a county jail, city jail, industrial farm, or road camp for a crime committed on or after October 1, 2011.  Any days earned by a

16

prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law." The gravamen of defendant's equal protection claim is that, if the new credit provisions are given only prospective effect, the scheme would result in impermissible disparate treatment of similarly situated inmates, simply based on the date of their respective offenses.

Defendant committed the instant offenses on January 2, 2010. At that time, Penal Code section 4019 provided two days of conduct credits could be earned for each four days of actual presentence custody served. All the amendments described above took place after the date that defendant committed his crimes. The most recent amendment, effective October 1, 2011, provides that two days of conduct credits may be earned for each two days of actual presentence custody and, as noted, expressly provides that the new version shall apply only to those inmates who committed their crimes on or after the effective date of October 1, 2011. The issue is whether the prospective-only application of the statute is violative of Equal Protection principles.

" 'The right to equal protection of the laws is guaranteed by the Fourteenth Amendment to the federal Constitution and article I, section 7 of the California Constitution. The "first prerequisite" to an equal protection claim is " 'a showing that "the state has adopted a classification that affects two or more similarly situated groups in an unequal manner." ' . . . ." [Citation.] [¶] "Equal protection applies to ensure that persons similarly situated with respect to the legitimate purpose of the law receive like treatment; equal protection does not require identical treatment. [Citation.]" [Citation.] The state "may adopt more than one procedure for isolating, treating, and restraining

17

dangerous persons; and differences will be upheld if justified. [Citations.] Variation of the length and conditions of confinement, depending on degrees of danger reasonably perceived as to special classes of persons, is a valid exercise of power." ' [Citation.]" (*People v. McKee* (2012) 207 Cal.App.4th 1325, 1334-1335.)

The People argue here that defendant has failed to show that the two classes of offenders affected—those who committed their crimes before October 1, 2011, and those who committed their crimes on and after that date—are in fact similarly situated. " 'This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged." ' " (*People v. Brown* (2012) 54 Cal.4th 314, 328.)

In *Brown*, the California Supreme Court considered the equal protection question with respect to the earlier amendment of the presentence custody credits of January 25, 2010. The California Supreme Court in *Brown* held, analogously to the situation here, that the purposes of a statute authorizing incentives for good behavior "are not served by rewarding prisoners who served time before the incentives took effect and thus could not have modified their behavior in response. That prisoners who served time before and after former [Penal Code] section 4019 took effect are not similarly situated necessarily follows. On this point we find the decision in [*In re*] *Strick* [(1983)] 148 Cal.App.3d 906, persuasive. In that case . . , the Court of Appeal rejected the claim that an expressly prospective law increasing conduct credits violated equal protection unless applied retroactively to prisoners who had previously earned conduct credits at a lower rate. 'The obvious purpose of the new section,' the court reasoned, 'is to affect the behavior of

18

inmates by providing them with incentives to engage in productive work and maintain good conduct while they are in prison.' (*Strick*, at p. 913.) '[T]his incentive purpose has no meaning if an inmate is unaware of it. The very concept demands prospective application.' (*Ibid*.) 'Thus, inmates were only similarly situated with respect to the purpose of [the new law] on [its effective date], when they were all aware that it was in effect and could choose to modify their behavior accordingly.' (*Ibid*.)" (*People v. Brown*, *supra*, 54 Cal.4th at pp. 328-329.)

*In re Kapperman* (1974) 11 Cal.3d 542, on which defendant relies, is distinguishable. There, the California Supreme Court held a new statute that provided for presentence *custody* credits for prison inmates must be applied retroactively to avoid violating equal protection guaranties. However, credit for time actually served is not the same as credit for good behavior. (See *People v. Brown*, *supra*, 54 Cal.4th at p. 330.)

In *People v. Ellis* (2012) 207 Cal.App.4th 1546, the Court of Appeal found "no reason *Brown's* conclusions and holding with respect to the January 25, 2010, amendment should not apply with equal force to the October 1, 2011, amendment. (See *People v. Lara* (2012) 54 Cal.4th 896, 906, fn. 9 [144 Cal.Rptr.3d 169, 281 P.3d 72].) Accordingly, we reject defendant's claim he is entitled to earn conduct credits at the enhanced rate provided by current [Penal Code] section 4019 for the entire period of his presentence incarceration." (*Id*. at p. 1552.)

For the same reasons, we also reject defendant's claim here that he should be awarded additional presentence conduct credits.

DISPOSITION

The minutes of the sentencing hearing and the abstract of judgment must be corrected to reflect that the court ordered the sentence on count 2 to be stayed, pursuant to Penal Code section 654.  Further, the abstract of judgment should be amended to strike the fourth prison term prior, inasmuch as the trial court clearly indicated its intent not to impose sentence as to that enhancement.  A copy of the abstract of judgment as corrected shall be forwarded to the California Department of Corrections and Rehabilitation.  With the exception of these minor corrections to defendant's sentence, we reject otherwise defendant's contentions and we affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


McKINSTER
J.


We concur:


HOLLENHORST
Acting P. J.


MILLER
J.


20